## SAMUEL MARSHALL

*v.*

## JOHN GRIDLEY.

|  |  |
|---|---|
| 46 | 247 |
| 26a | 192 |
| 46 | 247 |
| 130 | 392 |
| 46 | 247 |
| 211 | 5238 |
| 111a | 5616 |
| 46 | 247 |
| 214 | 6457 |

1.  EVIDENCE—*written contracts cannot be varied by parol.*   Parol evidence is not admissible to vary, contradict, strike out, add to or explain a written contract.

2.  CONTRACTS—*cannot rest partly in writing and partly in parol.*   An agreement cannot rest partly in writing and partly in parol.

3.  SAME—SALES—*place of delivery.*   The 12th section of the chapter entitled "negotiable instruments," declares that where the maker of an instrument of writing for the delivery of articles of personal property, specifies no particular place of delivery, it shall be lawful for the maker to tender them on the day mentioned in the writing, where the obligee or payee resided when the agreement was entered into ; but if the articles are too ponderous to be easily moved, or if the obligee or payee had not, at the time of executing the writing, a known place of residence in the county where the maker resides, then the maker may tender them at the place where he himself resided at the time of its execution.

4.  It is error for the court to instruct the jury that the purchaser should neither have a place of residence or *business* in the county, at the time of making the agreement, before the seller could tender the articles to be delivered at his own place of residence.    The statute referred to has said nothing about a place of *business*, it only speaks of place of residence.

5.  EVIDENCE—*when parol may be introduced in reference to a written contract.*   It is a rule of uniform application, that parol or other extrinsic evidence, may be resorted to for the purpose of identifying the property sold.   This evidence does not infringe upon the rule that a written agreement cannot be contradicted, enlarged or varied by parol.

6. When a contract on its face seems to be explicit and certain, but is rendered uncertain by extrinsic evidence, then it may be explained by the same character of testimony by which the uncertainty was created.

7. Where the uncertainty appears from the instrument itself, it cannot be explained by parol evidence.

APPEAL from the Circuit Court of Peoria county.; the Hon. SABIN D. PUTERBAUGH, Judge, presiding.

The facts are sufficiently stated in the opinion.

Mr. D. McCULLOCH, for the appellant.

Messrs. O'BRIEN & WELLS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by John Gridley, in the Peoria Circuit Court, against Samuel Marshall, to recover damages for a breach of contract to deliver from ninety to one hundred hogs. The declaration contained a special and the usual common counts. Defendant pleaded the general issue and seven special pleas. The second plea was to the first count, and averred that defendant was ready, willing and offered to deliver the hogs mentioned in the contract, at the specified time, upon plaintiff paying the contract price, which was demanded and refused. The third plea is to the same count and avers, that he was ready, willing and offered to deliver the hogs according to the contract, upon plaintiff paying therefor, which he refused to do on demand. The fourth plea was to the second count, and the same as the second plea. The fifth was to that count, and the same as the third. The sixth and seventh pleas are to the third count, and the same as the second and third pleas.

The eighth plea is to the fourth count, and avers that defendant was indebted to plaintiff for money had and received; that on the 21st of August, 1865, defendant entered into a contract to deliver plaintiff from ninety to one hundred hogs, on the first day of January, 1866, at $8 per 100 pounds, to be paid on delivery, and he paid defendant $100 on the contract; plaintiff to have the privilege of receiving one car load on the first of December; that on the day specified, defendant was ready and willing, and offered to deliver the hogs according to the terms of the contract, but plaintiff refused to receive them, and that the $100 was all the money received of plaintiff. To the first plea the similiter was added. To the second plea the replication traverses the offer to deliver, and the refusal to receive, the hogs. Similar replications were filed to all of the other pleas except the eighth. It averred that one thousand dollars was received. Issue was joined on all of the replications.

A trial was had by the court and a jury. A verdict was returned for plaintiff, and the damages were assessed at $200. Defendant entered a motion for a new trial, which was overruled, and the court rendered judgment on the verdict. The case is brought to this court on appeal, and the defendant assigns various errors for the reversal of the judgment.

On the trial below, appellee read in evidence this agreement:

"AUGUST 21, 1865.

I have this day bought of Sam. Marshall for John Gridley, from 90 to 100 hogs, to be taken the first of January, at eight dollars per hundred, live weight. I am to take one car the first of December if I like—which he has received one hundred dollars.                S. MARSHALL,

J. C. DARNELL."

The whole controversy in this case grows out of the meaning of this contract, and the proper mode by which it is to be interpreted. On the trial below, the court permitted appellee to prove that the people of the neighborhood were in the habit

32—46TH ILL.

of delivering their hogs, when sold on foot, at Elmwood station, two and a half miles distant from appellant's; and that appellee had, for several years previously, bought appellant's hogs, and that they had been delivered at Elmwood; that appellant was at that place on the day fixed for the delivery, ready and willing to receive and pay for them.

There are few rules of law, more uniformly or firmly established, than that verbal evidence is inadmissible to change or vary a written agreement. Such evidence cannot be received to contradict or strike out, or add any clause to such an agreement. As prepared and executed, without adding to or taking from its terms, it must stand as their agreement. Where they have solemnly reduced it to writing, they thereby agree that it shall determine what was agreed upon by them, and all antecedent propositions and efforts to make the contract which are not embraced in its terms, must be rejected, as forming no part of the contract. The agreement cannot rest partly in writing and partly in parol. This rule is inflexible; so long as the contract remains in force, it speaks, and must alone speak, the intention of the parties. The adoption of a different practice is erroneous.

It then follows, that, in so far as oral evidence was admitted to fix the place of delivery of the hogs, the court erred. And the same is true of the instructions, so far as they directed or permitted the jury to consider such evidence. The court below erred in both respects in this case, as such evidence was admitted and such instructions were given at the request of appellee, and also by modifying the eleventh instruction asked by appellant.

The twelfth section of chapter entitled "Negotiable Instruments," declares that where the maker of an instrument of writing for the delivery of articles of personal property, specifies in the instrument no particular place, it shall be lawful for the maker to tender them on the day mentioned in the writing, at the place where the obligee or payee resided when

the agreement was entered into; but if the articles are too ponderous to be easily moved, or if the obligee or payee had not, at the time of executing the writing, a known place of residence in the county where the maker resides, then the maker may tender them at the place where he resided at the time of its execution.

The court below modified the eleventh of appellant's instructions, so as to require that the purchaser should neither have a place of residence or business in the county at the time of making the agreement, before the seller could tender at the residence of appellant. The statute has said nothing about a place of business; it only speaks of the buyer's residence. In this the court departed from the statute, and required more than it had prescribed, and in this there was error.

The court below refused to give appellant's twelfth instruction. It asked the court to inform the jury that they could not take into consideration the declarations of the parties, or other evidence, to identify the hogs that were the subject of the contract. It is a rule of uniform application, that parol or other extrinsic evidence may be resorted to, for the purpose of identifying the property sold. Nor does such evidence infringe upon the other rule, that a written agreement cannot be contradicted, enlarged or varied by parol. If I sell my farm as black acre, and I have other farms, the purchaser may resort to parol evidence to prove which farm is black acre. If a man sell his saddle-horse, and give a bill of sale, the buyer may prove which is the saddle-horse. So, if he sell a horse generally, and he has divers horses, parol evidence may be resorted to for the purpose of showing which horse it was. This is a rule that has never been questioned, so far as we can learn.

Such evidence in no wise varies the contract. It is only the means of applying the contract or agreement to the object or thing to which it relates. All such uncertainties are latent ambiguities, and the authorities all concur in holding that they

may be explained by extrinsic evidence. Where a contract, on its face, seems to be explicit and certain, but is rendered uncertain by extrinsic evidence, than it may be explained by the same character of testimony by which the uncertainty was created. But where the uncertainty appears from the instrument itself, it cannot be explained by parol evidence. Here the sale was of a certain number of hogs, and had it appeared, that, from the time of the execution of the contract until the time for their delivery, he had owned no other hogs than these, there could have been no doubt as to what hogs he had sold. But when it is shown that he had more than the number sold, a doubt is created, and that uncertainty may be removed by evidence of the same character by which it was raised. The judgment of the court is reversed and the cause remanded.

*Judgment reversed.*