RACHEL E. WHITAKER

*v.*

STEPHEN S. MILLER *et al.*

1. CONVEYANCE—*deed without grantee is invalid.* A deed for land without the name of a grantee, when it is acknowledged and delivered, is invalid. There must be in every grant a grantor, a grantee and a thing granted; and a deed wanting in either essential, is absolutely void.

2. SAME—*right to fill grantee's name in blank.* A blank in a deed as to the name of a grantee, can not be filled in favor of a subsequent innocent purchaser, by inserting the name of one having no interest, and not authorized, under a parol authority, to insert the name of one who will exchange furniture for the land, especially after the authority is revoked by a demand for the deed by the grantor.

3. A grantee in a void deed takes nothing, and therefore can pass no title by his conveyance which even a court of equity will enforce against the true owner, who has been guilty of no wrong.

4. Where a party executed a deed for certain suburban lots in Chicago, leaving the grantee's name in blank, and delivered the same to a person, to be exchanged for furniture, without having read the same, and not knowing that it contained other valuable lands, and on the next day demanded the same, but was assured of its destruction, and such person filled the blank with the name of a party who did not exchange furniture, but was a naked trustee for the person inserting his name, and the grantor, as soon as apprised of the fraud, filed her bill to set aside the deed, it was *held,* that she was not estopped in equity from asserting the truth, as against parties claiming to be subsequent purchasers without notice of the facts.

5. NOTICE—*arising from possession of land.* The possession of land by a party, through his tenants, is notice to all the world of his rights in the premises, and without inquiry of him no one can claim to be an innocent purchaser, as against him.

6. DEED—*no title passes without delivery.* No title passes by a deed for lands, without it has been delivered.

WRIT OF ERROR to the Circuit Court of Livingston county; the Hon. NATHANIEL J. PILLSBURY, Judge, presiding.

This was a bill in chancery, by Rachel E. Whitaker against Stephen S. Miller, John F. Battles, Edgar A. Congdon, Myron L. Pearce, George W. Newcomb and Azariah Eddy, to set aside a certain deed of complainant purporting to convey the

west one-half of the south-west quarter of section 26, township 26 north, range 8 east of the third principal meridian, in Livingston county, Illinois, as a cloud upon complainant's title.

The facts attending the execution of this deed are stated in the opinion of the court. The bill further shows that the deed from complainant to Battles was dated Oct. 31, 1872, and recorded on Nov. 13, 1872; that Battles, by deed dated Dec. 2, 1872, for the expressed consideration of $3800, conveyed said land to Miller, and that Congdon, Pearce, Newcomb and Eddy have, or claim to have, some title or interest in the land, by conveyances from Miller.

The cause was heard on bill, answers, replication, and testimony of witnesses taken. On the hearing, the court dismissed the bill.

Mr. J. W. CHICKERING, and Messrs. MORRIS, DEWOLF & SINGLETON, for the plaintiff in error.

Mr. C. M. HARDY, and Mr. WILLIAM J. HERRICK, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The contention in this case has reference, principally, to the lands situated in Livingston county. What contracts complainant and Miller may have had in regard to Iowa lands and Chicago suburban lots, is a matter of no consequence, as the case comes before us, further than they show the manner of dealing between the parties. Under the evidence, it can not be seriously disputed, the deed to Battles for the land in Livingston county was executed in blank, and his name subsequently inserted as grantee, without the knowledge or consent of the grantor. The proof is also clear it was executed under the belief the property described in it was Chicago suburban lots. The original deed is with the record, and from an inspection, it plainly appears the name of the grantee was written in it at a different time from the body of the deed. It was incumbent on Miller and those claiming under him to explain

this palpable alteration in the deed.    This they have not done.

It is conceded, Battles never had any interest in the lands. According to Miller's own testimony, the deed to him was for his benefit.    The grantee named was simply a trustee for Miller.

Complainant is positive, she never acknowledged but four deeds in her transactions with Miller—one to the Iowa land, in blank, by his directions and procurement; one to her father, for Chicago lots; one to her father, for the lands in Livingston county; and one other, as she supposed, for two Chicago suburban lots.  She declares most positively, she never heard of Battles, and never made any deed to him for any property.  To the same effect is the testimony of her father, who was really the beneficial owner of all the property.    Their testimony, in this regard, is not overcome by anything in the testimony of Miller. It seems to us his conduct in the several transactions is mysterious and inexplicable.    Adopting his own version of the transaction, the name of Battles was inserted in the deed as grantee, without any reason whatever.    Battles had not bought the land, and had no interest in it.    It was at the suggestion of Miller the deed for the Iowa land was executed in blank, and was afterwards filled up, perhaps with the name of his wife.    The deed for the two lots to be exchanged for furniture for complainant was also executed in blank, by his procurement, and under his advice.   Actual conveyances of real property are not usually made in that way.    Unless some fraud or advantage was meditated, we are at a loss to understand why so many deeds were executed in blank.    The facts proven are calculated to make the impression it was a plan adopted to overreach complainant, who was a young woman without experience in business matters, and who evidently relied with great confidence on Miller's integrity as a business man.

It is evident the signature to the deed is the genuine signature of complainant, and it was, no doubt, acknowledged; but her theory is, it was executed in blank by the procurement of Miller, under the belief, induced by his assurances, the prop-

erty embraced in it were two Chicago lots, which she wished to exchange for furniture, when in fact it contained the lands involved in this litigation, and subsequently the name of Battles was inserted as grantee, without her knowledge or consent. Her explanation is, that Miller represented to her the trade for the furniture could not be effected unless it was attended to at once, and urged to immediate action. She acknowledged the deed without reading the description of the property, relying on the good faith and assurances of Miller, but did observe it was in blank and contained the name of no grantee. This theory of the case, in our opinion, is better sustained by the evidence than any other. All that militates against it is the unsupported testimony of Miller. Every uncontroverted fact in the case is in harmony with it and is inconsistent with any other hypothesis. Miller's conduct, from his first interview with complainant and her father, is singular, if we characterize it by no stronger term. No reason has been assigned, nor can any be, consistently with the usual mode of doing business, for procuring so many deeds to be executed in blank, nor has any explanation been made of the fact he filled the blank in the deed with the name of Battles, a party who had no sort of interest in the land. It stands admitted, the name of Battles was written in the deed at a different time from the other written portions. But above all, what good reason can be assigned for the destruction of the deed, which he concedes was for two Chicago lots, before complainant reached his office on the next morning? It was not his deed, and he had no right to destroy it. He had every reason to believe she would shortly return to ascertain whether the contemplated trade for furniture had been consummated. The conclusion is evident, to our minds, and is warranted by the evidence, the last deed acknowledged by complainant, under the direction of Miller, in such great haste, was not a deed for Chicago lots, but was a deed for the lands in Livingston county. The fact it was in blank, seems to have been a plan adopted to throw complainant off her guard. The whole affair has much the appearance of a cunningly devised scheme

to overreach complainant and her father, and deprive them of valuable property.

As we have seen, the deed was executed in blank, and the law has been definitely settled by the decision of this court, in *Chase* v. *Palmer*, 29 Ill. 306, a deed, without the name of a grantee when it is acknowledged, is invalid. It is said, there must be, in every grant, a grantor, a grantee and a thing granted, and a deed wanting in either essential is absolutely void. Holding, as we do, the deed was executed in blank, the most favorable view that can be taken is, that there was parol authority from the grantor to fill in the grantee's name, and hence the deed would be valid as to innocent purchasers. But there are two insuperable objections to this position: First, the authority was not to fill the blank with the name of Battles, but with the name of the person with whom the lots were to be exchanged for furniture; and, second, that parol authority, whatever it may have been, was unequivocally revoked on the next morning when the grantor demanded her deed and was assured it had been destroyed. The rights of no innocent purchasers had then intervened, and what Miller may have done afterwards could not bind her.

It follows, as a corollary from the premises, the deed executed in blank as it was, without any authority from the grantor, by parol or otherwise, to fill the blank, did not divest complainant of her title to the lands. It is illogical to say there can be a purchaser without notice, in the technical sense of the common law, against which the courts will render no assistance under a deed absolutely void. Equity will rather disarm a party of such a title as against the true owner, who has himself been guilty of no wrong. This is plain on principle. It is for the simple reason, the grantee in a void deed takes nothing and therefore can grant nothing. No title is derived that can be enforced or maintained in any court; and, at most, it is but a cloud upon the title of the owner, which, under our statute, equity will remove.

Nor do we discover anything in the conduct of complainant that would or ought, equitably, to estop her from asserting the

25—83D ILL.

truth as against parties claiming to be purchasers from Miller, whether with or without notice. Without unreasonable delay after discovering what had been done, she filed this bill, which apprised all parties of what rights she claimed in the premises. Our understanding of the evidence is, she never knowingly executed a deed in blank for these lands, nor did she do anything she could reasonably anticipate Miller could use to perpetrate a wrong upon any one. On the next morning after its execution she made every possible effort to get back what she supposed was a deed in blank for Chicago suburban lots, and was most positively assured it had been destroyed. When she called the following day for the same purpose, she was again solemnly assured it had been torn up. Pieces of what was said to be the deed were exhibited to her as proof of its absolute destruction. What more could she have done to recall the deed or to prevent Miller from making an improper use of it? She had no reason then to suspect or believe Miller was dealing unfairly with her. Indeed, she believed the contrary. Neither legally nor morally is she responsible for the use Miller may have subsequently made of the deed, any more than she would have been had it been an absolute forgery and wholly unknown to her.

But there is another, and perhaps more important, reason, why the alleged purchasers from Miller can not claim the protection accorded to innocent purchasers of real property. When they obtained their interests in these lands, whatever that may have been, complainant was in possession by her tenants, and it was their plain duty to inquire of her what interest she claimed. This they omitted to do. Her possession was notice to all the world of her rights in the premises, and inquiry of her would have disclosed a knowledge of the truth. Without inquiry, no one can claim to be an innocent purchaser of lands in the actual possession of another, as against such party. The law charges him with notice of all the rights of the party in possession. The means of information were open to these parties, of which they did not avail,

and it is, therefore, idle to insist defendants are innocent purchasers of these lands in any just sense.

The point is made, complainant is not the proper party to bring this suit, because she had previously parted with all her title to the property by deed to her father. A sufficient answer to the position assumed is, that deed was never delivered, and therefore no title passed under it. All the testimony is that way, and nothing appears to the contrary.

The equities of complainant are superior to any in favor of any of defendants, and must prevail. The decree will, therefore, be reversed, and the cause remanded.

*Decree reversed.*