WIKE BROS.

*v.*

JONATHAN GARNER.

*Opinion filed April 17, 1899.*

1. HOMESTEAD—*statute construed as to who is the head of a family.* A bachelor occupying a home with his sisters, who are dependent upon him for support, the parents being dead and one of the sisters being a distracted person, is a householder having a family, within the meaning of the Homestead act.

2. SAME—*undivided interest in land accompanied by exclusive possession supports homestead.* As against creditors, one having an undivided half interest in land occupied by him as a residence with the other co-tenant, his sister, who accords him the sole possession and control of the property in consideration of her support, may claim the homestead exemption.

3. SAME—*creditors do not acquire lien during erection of householder's home.* Where the head of a family purchases a lot and begins the erection of a house which he intends to occupy as a home, the entire property being worth less than $1000, creditors cannot acquire a lien if the owner moves upon the property within a reasonable time and occupies it as a homestead.

4. SAME—*right of debtor to occupy premises as a homestead pending suit.* The rights of creditors as to property occupied by the debtor as a homestead after the filing of their bill to cancel a previous satisfaction of their judgment, enjoin the sale of the property and subject it to such judgment, attach from the date of the decree and not from the filing of the bill, where the court does not cancel the satisfaction of such judgment but enters a money decree and directs execution to issue.

WRIT OF ERROR to the Circuit Court of Pike county; the Hon. HARRY HIGBEE, Judge, presiding.

W. E. WILLIAMS, for plaintiffs in error:

In Massachusetts, California, Minnesota, Wisconsin, Louisiana and Michigan it is held that an estate in common will not support a right of homestead in a co-tenant. *Thurston* v. *Maddock,* 6 Allen, 430; *Reynolds* v. *Pixley,* 6 Cal. 165; *Wolf* v. *Fleischacker,* 5 id. 245; *Kingsley* v. *Kingsley,* 39 id. 665; *Bernis* v. *Driscoll,* 101 Mass. 421; *Ward* v. *Huhn,* 16

Minn. 159; *West* v. *Ward,* 26 Wis. 580; *Ventress* v. *Collins,* 28 La. Ann. 783; *Lozo* v. *Sutherland,* 3 Mich. 218; *Amphlett* v. *Hibbard,* 29 id. 298.

Two tenants in common residing in separate buildings on the same premises may each be entitled to a homestead, but there cannot be two distinct homesteads acquired by the occupancy of the same building. *Meguiar* v. *Burr,* 81 Ky. 32.

A homestead cannot be jointly held with another. *Cornish* v. *Frees,* 74 Wis. 490.

Intended occupancy will support a homestead claim where it is followed, within a reasonable time, by actual occupancy. Waples on Homesteads, chap. 6; Thompson on Homesteads, secs. 247-252; *Crawford* v. *Richardson,* 101 Ill. 351; *Boyd* v. *Fullerton,* 125 id. 437.

Where an officer levies execution upon lands in which the defendant has no interest, and the property is purchased by the judgment creditor at the execution sale and the judgment satisfied of record, such judgment creditor may, upon motion before deed, have the satisfaction vacated and the judgment lien revived. *Ontario Bank* v. *Lansing,* 2 Wend. 260; *Adams* v. *Smith,* 5 Cow. 280; *Alday* v. *Rock Island County,* 45 Ill. App. 62.

After deed made, the judgment creditor may have a decree in equity to recover his debt from the judgment debtor. *Price.* v. *Boyd,* 1 Dana, 436; *Jones* v. *Henry,* 3 Litt. 427; *Muir* v. *Craig,* 3 Blackf. 293; *Warner* v. *Helm,* 1 Gilm. 220; 2 Black on Judgments, sec. 1010; *Bressler* v. *Martin,* 133 Ill. 289.

The function of an injunction is to suspend the conflicting claims of right of the respective parties where they are until they can be properly adjudicated. *Railway Co.* v. *Taylor,* 134 Ill. 603; 2 Daniell's Ch. Pr. (5th ed.) 1639; High on Injunctions, sec. 4.

The purpose of a writ of injunction is to maintain the *status quo* of the parties until the court can hear the case. 1 Spencer's Eq. Jur. 672, 673; *Hawks* v. *Champing,* Cary, 51;

*Dowche* v. *Beriot*, id. 63; *Hill* v. *Porturan*, id. 140; *Vanzant* v. *Argentine Manf. Co.* 2 McCreary, 642; High on Injunctions, secs. 5, 8.

The court should observe the objects for which the relief was granted and the circumstances attending it. The violation of the spirit of a writ of injunction, even though its strict letter may not have been disregarded, is a breach of the mandate of the court. High on Injunctions, sec. 1446.

The court will not permit the defendant to evade responsibility for violating the injunction by doing through subterfuge that which, while not in terms a violation of the letter of the writ, produces the same effect by accomplishing substantially that which he was enjoined from doing. High on Injunctions, sec. 1433.

W. L. COLEY, for defendant in error:

A family is a collective body of persons who live in one house, under one head or manager; the relatives who descend from a common ancestor. 1 Bouvier's Law Dic. 645; 7 Am. & Eng. Ency. of Law, (1st ed.) 803.

There must exist a legal or moral duty on the part of the head of the family to support the members thereof, and a corresponding dependence of the members upon the head. 7 Am. & Eng. Ency. of Law, (1st ed.) 804.

A bachelor or widower who occupies a house as the head of the family, on land which he desires to set apart as a homestead, who has living with him a mother, father, sister or brother who is dependent upon him for support, and where there is a corresponding duty of support resting on him, might properly be regarded as a householder having a family. *Holnback* v. *Wilson*, 159 Ill. 154.

The family, within the meaning of the Homestead law, consists of those members of the household who are dependent upon the householder for support or to whom the householder owes some duty. *Brokaw* v. *Ogle*, 170 Ill. 126; *Holnback* v. *Wilson*, 159 id. 148.

A householder is such a person as is the head of the family and upon whom the other members are dependent. To constitute a homestead there must be a householder and a family. *Brokaw* v. *Ogle,* 170 Ill. 126.

The claimant's rights under the Homestead Exemption act attach from the time he acquires title to the lot—at least from the time possession is taken and used to prepare a residence. *Crawford* v. *Richeson,* 101 Ill. 366; *Webb* v. *Hollenbeck,* 48 Ill. App. 516; *Boyd* v. *Fullerton,* 125 Ill. 437; *Reske* v. *Reske,* 51 Mich. 541.

Every poor person who shall be unable to earn a livelihood in consequence of idiocy, lunacy or other unavoidable cause shall be supported by the brothers or sisters of such poor person. 3 Starr & Cur. Stat. chap. 107, sec. 1.

The estate of homestead is limited by no specific degree or character of title in the particular property. It is value, and not quantity or extent of interest, that controls. *Eldridge* v. *Pierce,* 96 Ill. 481.

A homestead is an estate. Where the head of the family dies and the right of homestead devolves upon the surviving husband or wife by operation of law, a life estate is carved out of the fee and the heirs take a reversion in fee only. In like manner, where the homestead is cast upon the children of the family, the estate for years is by operation of law carved out of the fee for the purpose of such an estate of homestead in the children. *Browning* v. *Harris,* 99 Ill. 461.

The estate of homestead to the extent in value of $1000 is exempt from attachment, judgment, levy or execution sale for the payment of the householder's debts. 2 Starr & Cur. Stat. chap. 52, sec. 1.

To allow one party to obtain an advantage when the hands of the adverse party are tied by the writ of injunction is an abuse of legal process which cannot be tolerated. *Railway Co.* v. *Taylor,* 134 Ill. 605.

The intention of the occupant to permanently remove becomes effective only in divesting his rights with re-

spect to the property after the removal has taken place. So long as the actual abandonment is only in prospect the homestead claimant has the same right to change his mind as he would have to retract an intention, however well it may be fixed, to alienate his property or to perform any other intended act with respect to his own possessions, where the rights of third parties have not attached by reason of mutual covenant. His intention, in order to affect the homestead character of the place from which he had absented himself, must have reference to his present and not his contemplated removal. Thompson on Homesteads, sec. 268.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This is a writ of error sued out to reverse a decree of the circuit court of Pike county. It appears from the record that plaintiffs in error, John and George Wike, on the 11th day of September, 1893, obtained a judgment before a justice of the peace against defendant in error, Jonathan Garner, for the sum of $153 and costs. On the 16th day of the same month, on the oath of plaintiffs, an execution was issued on the judgment and delivered to a constable. On the 18th day of the same month the execution was returned *nulla bona*, and on the same day a transcript of the judgment was made out and filed in the office of the clerk of the circuit court. Thereafter, on the 25th day of August, 1894, an execution was issued on the judgment and delivered to the sheriff. The sheriff levied on real estate, which was advertised and sold to plaintiffs in error on the 22d of September, 1894, for the amount of the judgment and costs and the execution was returned satisfied. Upon the expiration of the time allowed by law for redemption, December 24, 1895, the sheriff made plaintiffs a deed for the land sold. Upon obtaining the deed plaintiffs in error discovered that defendant in error never owned or had any title to the land which had been sold. Thereupon they filed this bill to vacate the satis-

faction of their judgment and to enjoin the defendant in error from selling a certain house and lot in the town of El Dara, which it was alleged he owned, and to subject the property to sale in payment of the judgment.

The defendant answered, denying the allegations of the bill and alleging "that the deed to such property was taken in his name together with that of his sister, Susan Garner, and the said property was paid for by him and the said Susan Garner, and was bought by them with the intention and for the purpose of using the same as and for a home for him, the defendant, and his sister Susan Garner and his sister Emma Garner, who then was and for a long time prior thereto had been and now is a distracted person and dependent upon him for care and support, and he, together with the two sisters aforesaid, as soon thereafter as a house could be erected upon the premises, did occupy the same as a home, and since then have and now do occupy the same, which said above described property does not exceed in value $1000; that he is the head of the family, consisting of himself and his sisters, Susan and Emma Garner aforesaid, and that they, the said sisters, now are, and since, to-wit, November 20, 1889, (at which time his father died,) have been dependent upon him for support, and he has since that time supported them and taken upon himself the duty so to support and care for them."

On the hearing the defendant in error testified as follows: "I am post-master at El Dara. I am thirty-three years of age. Parents are not living. Father died in 1889 and mother in 1896. I live with two sisters. One sister is a year older than myself—a distracted person. Has been since she was fifteen years of age. My other sister is thirty years old and she keeps house for us. We have lived together since mother died, and I have supported and cared for the two girls since that time. I bear all the expenses. I own no property at El Dara except the house and lot—the same property described

in the bill. I bought the property in June of this year (1897). The title to the property is in myself and sister Susan. That is the sister that is not distracted. We proceeded to build a residence at once. We moved into the residence and now occupy it. We bought the lot for a home. The house and lot was $600. Paid $130 for the lot. The building cost about $450. I claim to be the head of the family and to occupy the house as a homestead." On cross-examination the witness further testified that at the time the injunction was served he had contracted to sell the place for $650 and intended to invest the money in another home. The testimony of this witness was not contradicted nor were the facts disclosed by him controverted.

Among other facts found by the court and incorporated in the final decree are the following: "The court further finds that the said Jonathan Garner and his sister, Susan Garner, purchased said property and erected a residence thereon for the purpose and with the intention of making the same a homestead; that he is a single man, residing with a family consisting of two sisters, and that he is the head of the same. The court further finds that at the time of service of the writ of injunction herein and the commencement of this suit said property was the homestead of the defendant, and that the same was exempt from execution and sale, and that the same was not subject to the lien of any judgment obtained by complainants, and that the injunction should be dissolved."

Three questions are raised in the argument of counsel for plaintiffs in error: First, will the undivided interest of the defendant, under the circumstances of the case, support a homestead right; second, will the mere intention to occupy property as a homestead, not carried into effect by subsequent actual occupancy, support a homestead right; and third, will the homestead right attach by the voluntary act of the claimant moving into and

occupying the property and claiming the same as a homestead, pending the injunction proceedings.

Section 1 of the Homestead act provides "that every householder having a family shall be entitled to an estate of homestead, to the extent in value of $1000, in the farm or lot of land and buildings thereon owned or rightly possessed, by lease or otherwise, and occupied by him or her as a residence." In *Holnback* v. *Wilson*, 159 Ill. 148, in considering the question who might be regarded as a householder, we said (p. 154): "A bachelor or a widower who occupies a home, as the head of a family, on land which he desires to set apart as a homestead, who has living with him a mother, father, sisters or brothers who are dependent upon him for support, and where there is a corresponding duty of support resting on him, might properly be regarded as a householder having a family, within the meaning of the statute." The defendant in error, Jonathan Garner, occupied a house with two sisters. He and they constituted the family. He, as appears from the evidence, was the head of the family and the two sisters were supported by him. We think, therefore, under the facts as they appeared in evidence, the defendant in error was a householder having a family, within the meaning of the statute.

By purchasing the lot which plaintiffs in error seek to subject to the payment of their debt against Jonathan Garner, it is apparent that if he had taken the title in his own name he would be entitled to claim the benefit of the Homestead Exemption act. But the title to the lot was conveyed to Jonathan Garner and Susan Garner, his sister, and it is claimed that as Jonathan Garner held only an undivided one-half interest in the property he could not claim the benefit of the Homestead act. This question arose in *Brokaw* v. *Ogle*, 170 Ill. 115, and it was there held that an undivided interest in land, accompanied by exclusive possession, will support a right of homestead in one of the co-tenants. Here Jonathan Gar-

ner was in the undisputed possession of the entire property. While Susan Garner owns the fee to an undivided half of the lot, she accords to Jonathan Garner the sole possession, management and control of the property. The statute does not require the householder to own the fee to enable him to claim the benefit of the Homestead act. On the contrary, the statute expressly provides that the householder shall be entitled to an estate of homestead in the property owned or rightly possessed, by lease or otherwise. Under this statute, if defendant in error owned an undivided half and had a lease of the other half, no reason is perceived why he might not claim the benefit of the statute,—and that was, in effect, his position, as he owned one-half and occupied the whole property with the consent and agreement of the owner of the other half, and she in turn received her support. Indeed, we are inclined to the opinion that where a householder is in the exclusive possession of a lot of land occupied by him as a residence it does not concern the judgment creditor whether such householder possesses the fee, an estate for life or for years, or what title he may have. Here the controversy is solely between plaintiffs in error, as judgment creditors, and defendant in error, and as against his judgment creditors defendant in error is entitled to claim the exemption of the statute.

It is next claimed that there was a mere intention to occupy the property as a homestead, which was abandoned, and hence no right of homestead existed in favor of the defendant in error. The evidence shows that the defendant in error purchased the lot for a home and that he proceeded at once to erect a house thereon for a residence. When the house was about completed defendant in error had an offer for the place, and concluded to sell and invest the money in another place, but after the bill was filed he abandoned the sale and moved into the house, and since that time occupied it as a homestead. We do not think the fact that the defendant in error made up

his mind to sell the property but did not consummate the sale deprived him of the right, when he saw proper to move in and occupy the property as a residence, to claim it as a homestead. The property was worth less than $1000, and if the lot was purchased and the house erected for a residence, and was followed by actual occupancy by defendant in error without unreasonable delay, as the evidence shows was the case, it was not liable to be seized and sold by plaintiffs in error on any judgment or decree they might obtain. Where a person buys a lot for a home, as was the case here, and erects a house on the lot, a creditor cannot acquire a lien on the property, if, within a reasonable time, the purchaser moves on the property and occupies it as a homestead. The rule laid down in *Crawford* v. *Richeson*, 101 Ill. 351, applies here.

It is finally claimed that defendant in error, by moving into and occupying the property claiming it as a homestead, could not defeat the intervening rights of plaintiffs in error,—in other words, it is claimed that defendant in error could acquire no rights by moving in the property after the bill was filed. The bill was filed to enjoin defendant in error from selling the property, but he was not enjoined from moving into the property or using it as he might desire. When the bill was filed plaintiffs in error had no lien on the property. Indeed, they had no judgment against defendant in error. Their judgment had been satisfied, and one object of the bill was to vacate the satisfaction and reverse the judgment. Plaintiffs in error, so far as the property was concerned, had no intervening rights to be defeated. Section 1 of chapter 77 of the Revised Statutes provides "that a judgment of a court of record shall be a lien on the real estate of the person against whom it is obtained, situated within the county for which the court is held, from the time the same is rendered or revived, for the period of seven years, and no longer." It will be observed that the court, by its decree, did not cancel or set aside the satisfaction of the judg-

ment, but entered a money decree and directed execution to issue. Under such circumstances, as is suggested in argument of defendant, the rights of plaintiffs in error to subject any property of the defendant to the payment of their demand dates from the time their decree was rendered, which was July 2, 1898. When the decree was rendered, and for a long time previous to that date, defendant in error was occupying the house and lot in question as a homestead.

We think the court properly held that the property in question was the homestead of the defendant in error, and the decree will be affirmed.     *Decree affirmed.*