(No. 26267.—

WILLIE LOGUE *et al.* Appellants, *vs.* LOUISA VON ALMEN *et al.* Appellees.

*Opinion filed Nov. 18, 1941—Rehearing denied March 12, 1942.*

ORR, VAIL, LEWIS & ORR, and MURRAY & MILLER, for appellants.

SMITH & McCOLLUM, WILL P. WELKER, and GUY L. SMITH, for appellees.

Mr. CHIEF JUSTICE MURPHY delivered the opinion of the court:

Plaintiffs Willie Logue, Hannah Logue, Mary E. Logue, George W. Logue, Diann Miller, Laura Tucker, Charles Logue and Mary Taylor own as tenants in common 120 acres of land located in an oil field in Fayette county. The spouses of those that are married are the other plaintiffs. They began this suit in the circuit court of Fayette county to remove certain mineral deeds as clouds upon their title. All of the plaintiffs, except Mary Taylor, executed a mineral deed conveying to M. R. Van Almen an undivided one-half interest to all of the oil, gas and other minerals in the 120 acres. A few days thereafter, Von Almen conveyed various fractional interests to other parties and his grantees and their successors in title, the sole devisees of M. R. Von Almen, now deceased, and the Carter Oil Company, which holds oil and gas leases from the plaintiffs, are the defendants. There is no controversy as to the leasehold interests and rights of the oil company as plaintiffs' lessee. The sole devisee of M. R. Von Almen has filed a disclaimer of any interest in the subject matter of this suit. After a hearing of evidence, a decree was entered dismissing the complaint for want of equity. Plaintiffs have appealed direct to this court. A freehold is involved. *Tucker* v. *Kanatzar,* 373 Ill. 162.

As grounds for reversal plaintiffs contend: (1) That their deed to M. R. Von Almen was never delivered; (2) in the alternative, if it was delivered, it was procured by such fraud and misrepresentation that it should be set aside; (3) that Mary Logue, Hannah Logue and Willie Logue have a homestead interest in the land which was not released by the deed. If the deed is set aside for any one or more of the reasons urged, the rights of the grantees of M. R. Von Almen and their successors in title are in dispute. All of them, except defendant W. L. Smith, claim to be *bona fide* purchasers for value without notice.

All the tenants in common, except Mary Taylor and Charles Logue, are brothers and sisters, each owning an undivided one-seventh of the land. Mary Taylor and Charles Logue, niece and nephew of the other plaintiffs, each own an undivided one-fourteenth interest. In the early part of the year 1936, defendant W. L. Smith, a resident of said county, was assisting M. R. Von Almen in procuring oil and gas leases in Fayette county for the Carter Oil Company. On June 19 of that year, Smith obtained from plaintiffs Willie Logue, Hannah Logue, Mary E. Logue, George W. Logue and Lucy Logue, his wife, an oil and gas lease which was taken in the name of M. R. Von Almen which is now held by the oil company. On October 13, 1936, at the instance of W. L. Smith, the above named grantors and Diann Miller and her husband executed a mineral deed conveying a fractional interest in all of the oil, gas and other minerals to Julia E. Smith who was the wife of W. L. Smith. In the course of obtaining this mineral deed Smith learned for the first time that other persons were interested in the lands as tenants in common. No further action was taken in reference to obtaining the signature of the other tenants in common to the deed to Julia E. Smith and although Smith retained possession of this deed it was agreed on the trial that no rights were claimed by virtue of it.

After obtaining information as to the names and residences of the other interested parties, Smith prepared an oil and gas lease to include those tenants in common who had not signed the previous oil and gas lease and also prepared a mineral deed containing the names of all the tenants in common and the spouses of those that were married. This deed contains a provision that the grantors "called grantor (whether two or more)" for a consideration of $182 conveyed and warranted "to M. R. Von Almen * * * an undivided one-half interest in and to all of the oil, gas and other minerals," etc. It was made subject to

the rights of all parties holding oil and gas leases. The tenants in common resided in various places in this State, and on October 15, 1936, Smith took the deed to their respective residences and all signed excepting Mary Taylor. At the same time all of those who had not signed the first oil and gas lease executed the one that Smith carried with him at this time. The acknowledgments were taken before W. L. Smith, as notary public. The deed was not recorded until March 1, 1937. This deed is the one on which this controversy centers.

On October 26, 1936, Von Almen and wife conveyed an undivided one-fourth interest in the oil, gas and other minerals, subject to the lessees' rights, to defendant W. L. Smith. The same date Von Almen conveyed to Alf Richard Thompson and Mabel Thompson 3/32nds; to Ruth G. Breen a 1/16th; to Van C. Mundwiler and Lottie Mundwiler, a 1/32d, and on March 31, 1937, to Clarence T. Smith a 1/16th interest. The Breen fractional interest was, on June 27, 1939, conveyed by Breen and her successor in title to O. K. Miller. One-half of the Clarence T. Smith interest was conveyed to E. H. Arbuthnot on January 22, 1938.

On the question of delivery of the deed, the pertinent facts are that Smith testified he was working for Von Almen in the matter of obtaining the mineral deed. He prepared the deed and took it to the home of Willie Logue, Mary Logue and Hannah Logue who resided together on the premises in question and there these parties, with George W. Logue, signed it. After the signing, Smith carried the deed to the home of George W. Logue, where Lucy Logue, George's wife, signed. Smith then took the deed to the home of Diann Miller in Effingham, where she and her husband signed. From there he carried the deed to the home of Laura Tucker in Decatur, where she signed it and her husband Elzie Tucker signed it at his place of employment. Charles Logue signed the deed at his place of em-

ployment near Sullivan, and from there Smith carried the deed to the place where Emanuel Taylor, the husband of Mary Taylor, was employed, and he signed it. Smith then presented the deed to Mary Taylor at her residence in East Pekin, and after obtaining advice of counsel, she declined to sign it.

Plaintiffs contend that the deed came into Smith's hands after being executed by the various grantors for the sole purpose of obtaining the signatures of the other tenants in common and that it never became a completed delivery for the reason that Mary Taylor never signed it. Defendants urge that the handing of the deed to Smith by the various grantors was a completed delivery as to each grantor who had signed.

A deed can not be delivered to a grantee or his agent as an escrow to take effect upon a condition not appearing on the face of such deed. A deed delivered on such a condition becomes absolute at law unless the delivery is made in escrow to a third party. (*McCann* v. *Atherton,* 106 Ill. 31; *Stevenson* v. *Crapnell,* 114 id. 19; *Ryan* v. *Cooke,* 172 id. 302.) Plaintiffs recognize this rule of law and that the delivery of the deed in question by each grantor was to the agent of the grantee, but contend that the deed contains terms which makes it a joint deed and one that would not be binding as to any of the grantors until all had executed it, and that delivery by a part, prior to a completed execution, would not be an effectual delivery. It is the law that where a deed shows on its face that it was intended to be jointly executed so that all grantors should be bound by its covenants, the signing and delivery by a part of such grantors does not make a complete delivery. (26 C. J. S. 252, sec. 49; *Consolidated Coal Co.* v. *Yonts,* 25 Fed. (2) 404; *Overman* v. *Kerr,* 17 Iowa, 485; *Devlin on Real Estate,* (3d ed.) p. 442, sec. 277.) However, the deed at bar can not be construed as containing such a con-

dition. The particular parts of the deed relied upon as expressing such a condition are that the grantors, under the terms of general warranties, conveyed an undivided one-half interest in the oil, gas and other minerals to Von Almen. The point of difference in construction is that plaintiffs contend it was a conveyance of one-half of the whole, and that the covenants in the deed would not be binding and there could not be a completed delivery until all had executed it. The defendants contend it was an intended conveyance of one-half of each tenant in common's share, and that the warranties became binding as to each grantor when he attached his signature, followed by delivery, and that there was a completed delivery as to all the grantors named in the deed except Mary Taylor.

The terms of the deed limit the transfer to an undivided one-half interest. It is provided in the deed that the grantee's rights were subject to the leasehold interest, that the grantee should receive and enjoy the undivided interest in and to all rents, royalties and other benefits which might accrue under the terms of the lease, the same as though he, the grantee, had at the time of the making of the lease been the owner of a similar undivided interest in the lands. The grantee was also given the right of ingress and egress for the purpose of mining, developing, exploring and marketing oil, gas or other minerals from the premises. Both of these provisions are consistent with the rights that a tenant in common may exercise in reference to a fractional part of his undivided interest, subject, of course, to the rights of his co-tenants. There is nothing by the terms of the deed that prevents it from becoming operative as to those who had signed or that made its operation dependent upon the condition that all of the owners should sign. The evidence shows that all the parties intended to convey an undivided one-half interest of their respective shares. Plaintiffs' contention, that the deed

should be construed as containing a condition which prevented it from becoming absolute unless all signed, can not be sustained.

Delivery of a deed is necessary to give it binding effect, and delivery is a question of intent. (*Ryan* v. *Cooke, supra.*) The distinction between the passing of possession of a deed to a grantee or his agent for the sole purpose of obtaining signatures of other grantors, and its delivery upon a condition that if other grantors did not sign the deed it was to become inoperative, is pointed out in *Stanley* v. *White,* 160 Ill. 605, in the following language: "If, after appellees [the grantors who had signed the deed] had signed and acknowledged the deed, they had merely handed it to appellant [grantee] for the purpose, solely, of having him get the signatures of the other heirs thereto, that would not have constituted a delivery, but would have been a mere manual transfer of possession, and would not have passed the title. If, however, the deed being ready for delivery they had given it to him intending at the time to pass a present title, but with the mutual, verbal understanding that the deed should subsequently become inoperative and void if the other heirs should refuse to sign it when requested so to do, then there would have been a delivery and the title would have passed, and the grantors could not thereafter set up the non-performance of the condition in order to defeat the deed, but would be concluded by its terms." There is nothing in the evidence that shows any of the plaintiffs handed the deed to Smith pursuant to any understanding, or with the intention, that he was merely receiving possession of the deed for the purpose of obtaining the signatures of the other owners. Their evidence indicates that when each of plaintiffs signed the deed and delivered it to Smith, they expected him to present it to the others for their signatures, but that, alone, would not be sufficient to show that there had been a mere manual transfer of the possession of the deed. The evidence shows

that Smith came into possession of the deed from the several grantors with the intent that such transfer of possession should be a completed delivery.

Plaintiffs cite *Evans* v. *Pure Oil Co.* 369 Ill. 416, and earnestly contend it is controlling. In that case some of the lessors had signed the lease and handed it to the agent of the lessee to obtain the signatures of the others. The opinion states that the agent assured those who signed that it would not be binding unless signed by all the remaining tenants in common. The evidence in this case does not show that Smith came into possession of the deed from the several grantors pursuant to any such understanding.

Plaintiffs' claim for a reversal of the decree on the grounds of fraud and misrepresentations arises from the inadequacy of consideration, Smith's misrepresentations and plaintiffs' ignorance of their rights. Mere inadequacy of consideration is not a distinct ground for equitable relief against the obligation of a deed, and, standing alone, is ordinarily of little weight as evidence of fraud, yet when it is accompanied by circumstances of overreaching, oppression, or undue influence, or when through the ignorance, age, mental or physical condition of the grantor or by misrepresentation, surprise or stress of financial circumstances the grantor is led into an improvident bargain, relief will be granted. (*Hardy* v. *Dyas,* 203 Ill. 211; *Walker* v. *Shepard,* 210 id. 100.) In *Huiller* v. *Ryan,* 306 Ill. 88, it is said that where circumstances of this character exist, proof of gross inadequacy of consideration becomes evidence of fraud, which is of controlling importance and justifies the interference of a court of equity. Inadequacy of price may be so gross and palpable as to amount, in itself, to proof of fraud. *Witherwax* v. *Riddle,* 121 Ill. 140; *Schwarz* v. *Reznick,* 257 id. 479.

As stated, Mary, Hannah and Willie resided together upon the premises in question. Considerable evidence was taken as to the condition and value of the farm in connec-

tion with the claim of homestead. It shows that the income from the farm was scant, that the three plaintiffs named had little personal property and that their annual income was barely sufficient to meet the most urgent necessities of life. Mary was seventy-four, Hannah seventy-two and Willie fifty-six years of age. Mary could read a little but could not write. Hannah and Willie could neither read nor write. All of them signed the deed by mark. The brother, George W., resided in the same community and could neither read nor write. His financial condition does not appear from the evidence, but he also signed the deed by mark.

The consideration for the deed arises from a note obtained by Smith in 1925. One Ira Williams was indebted to Smith on a rental transaction and Williams and his wife, and Willie Logue gave Smith a promissory note for $118.67, due in one year. Willie's name was on the note but evidently it was attached at his direction and under circumstances that fixed his liability as that of surety. A question was raised as to the date of the note and the original has been certified to this court. The verbal testimony tends to fix the date as December 5, 1925. Neither principal nor interest was paid and June 19, 1936, when Smith was obtaining the oil and gas lease from Mary, Hannah, Willie and George, he asked Willie about paying the note. The evidence is meager as to what was said but a new note was prepared by Smith which included principal and interest, totaling $177.80, and Willie and Hannah signed it by mark. The Williamses, whose indebtedness it was, did not sign it. This note was due in one year from date with interest at seven per cent. Upon the delivery of the new note signed by Hannah and Willie, Smith delivered the original note to the Logues.

When Smith returned to the Logue home October 13 with the first mineral deed, he proposed to Willie that he would surrender the note for the conveyance of one-half

of the mineral interests. As stated, Mary, Hannah, Willie and George signed the deed and Smith left the note in their possession. When Smith returned the following day with the second mineral deed containing the names of all the tenants in common, he endorsed upon the note, credit by sale of oil and gas rights on home 120 acres, $90, credit by George $30, credit by Diann $30, credit by Laura $30.

When Smith was interviewing the other tenants in common on October 14, he had the mineral deed and an oil and gas lease for those who had not signed the one dated June 19. It is impossible to set forth in detail the testimony of each of the plaintiffs in reference to what Smith said as to the deed or the consideration to be paid for it. Some of the plaintiffs testified that Smith told them that both papers were oil and gas leases. It does not appear that the deed was read by any of the grantors or was explained to them. The testimony of some of the witnesses clearly indicates that they did not comprehend the distinction between an oil and gas lease and a mineral deed. Smith paid each of those signing the oil and gas lease $1 but nothing was paid for the mineral deed. Smith contends that he asked each of plaintiffs if they would contribute to the payment of Willie's and Hannah's debt by the execution of the mineral deed and that they said they would. Their evidence on that point is in direct conflict with his. Although the title was held in seven parts, the computation and endorsement on the back of the note was on the basis of $30 per share for six shares, or $180.

W. L. Smith was seventy-five years of age, resided in Beecher City and had been a real estate broker in that city and vicinity for many years. It appears he was a director in a bank and had real estate holdings in that county and the fair inference is he had extensive business experience.

From the circumstances thus related and others which appear in the record, we are of the opinion that Smith obtained the signatures to the deed under such circumstances

that a court of equity should not permit the transaction to stand as against him. The deductions that can properly be drawn from the evidence as to the poverty-stricken condition of Hannah and Willie, the pressing demands of Smith, their financial inability to meet the note, their ignorance as to the effects of a mineral deed and lack of knowledge as to its contents, lead to the conclusion that there was not present in the transaction between Smith and these two parties that fair and open dealing which equity demands where the parties engaged in the transaction do not stand upon an equal basis. Any one of the several conditions mentioned, standing alone, would not be sufficient, but when all are considered together they establish a case for equitable relief.

As to the other plaintiffs, it will be observed that under Smith's own theory of the case, their signatures were attached to the deed without any consideration. The absence of consideration, together with the misrepresentations made by Smith as to the nature and character of the transaction and the legal effect of the instruments they were executing, also furnishes grounds for equitable relief.

Plaintiffs contend that Mary, Hannah and Willie each had a homestead interest in the land. It would not be necessary to decide this question except for the effect it may have upon the rights of the defendants who claim to be *bona fide* purchasers for value.

The chancellor found that at the time of signing the deed the farm was not worth $1000, and such finding is supported by the evidence. We agree with the holding of the trial court that Mary and Hannah had no homestead estate in the land but we can not agree with the holding that Willie did not have a homestead estate therein. In *Rock Island Bank and Trust Co.* v. *Lamont,* 361 Ill. 432, it was said that three conditions must exist under the Homestead Exemption act in order that a homestead estate be created: "(1) The claimant must be a householder; (2) he must have a family; and (3) the premises must be occu-

pied as a residence." If any of these requisites is wanting, the law will not create an estate of homestead. (*Holnback* v. *Wilson,* 159 Ill. 148; *Rock* v. *Haas,* 110 id. 528.) There is no question but what the first and third requirements are present. In the *Lamont case* it was said: "A family within the meaning of the Homestead act is not alone a collection of persons living together, but there must be an obligation, either legal or moral, upon some one who thus occupies the position of head of the house to support the others or some of them, and on the part of such others a corresponding state of dependence. * * * A family such as contemplated by the Homestead act consists of the householder and members of a household who are dependent upon the householder for support or to whom the householder owes some duty of support."

In *Wike Bros.* v. *Garner,* 179 Ill. 257, it was held that a bachelor who owned an undivided interest in real estate and occupied the same with two sisters, one of whom was an invalid, was the head of a family within the meaning of the Homestead Exemption law.

The undisputed evidence is that when the deed was made Mary and Hannah had no property other than their interest in this 120 acres and one owned a cow, the other a small amount of poultry. They had no individual incomes and by reason of age and physical infirmity had no earning capacity. The cultivated portion of the farm is on a creek bottom and consists of six or eight acres. A small amount of dairy products and poultry was sold annually and whatever was received was used in the payment of taxes on the land and the living expenses of the three. It is evident Mary and Hannah could not support themselves and that Willie assumed the obligation of supporting and caring for them. Willie Logue had a homestead estate in these lands.

Mary Logue and Hannah Logue could not have had a homestead interest in these lands for the simple reason that they could not be a member of Willie Logue's family

and be dependent upon him for support and at the same time be the head of a family assuming the obligations of support of others who resided with them. The requirements as set forth in the *Lamont case, supra,* were not present as to either Mary Logue or Hannah Logue.

Willie Logue's acknowledgment to the mineral deed was taken before W. L. Smith, a notary public. The certificate was in regular form for the releasing of a homestead estate but it is claimed that Smith had a financial interest in the deed and, therefore, the acknowledgment was void. If the acknowledgment was void for such reason, then the deed was void as to Willie's homestead interest, for it is well settled that if a deed is not acknowledged in form to release a homestead estate, and the value of the property attempted to be conveyed is less than $1000, the deed does not convey any title. (*Tucker* v. *Kanatzar, supra; Bruner* v. *Hicks,* 230 Ill. 536; *Rhodes* v. *Davis,* 374 id. 65.) An acknowledgment taken before a notary public who is financially interested in the transfer of the property is a nullity. *Ogden Building & Loan Ass'n* v. *Mensch,* 196 Ill. 554.

It is obvious that Smith was the real party interested in the first mineral deed, which was taken in the name of his wife, because the consideration he offered for the deed was a note he owned. On the trial he conceded, for the purposes of the record, that no rights were claimed under it. Julia E. Smith, the grantee, testified the deed was never delivered to her and that she claimed no interest in it. After Smith learned there were additional parties interested in the lands and stopped getting signatures to the first deed, he testified that he interviewed Von Almen about the purchase of the mineral rights. However, when the deed was presented to the various tenants in common the note held by Smith, which was used for the consideration of the previous deed, continued to be the sole consideration he offered for the second deed. Twelve days after plain-

tiffs executed the deed, Von Almen and wife conveyed to Smith a 1/4th interest in the mineral rights for a purported consideration of $25. The evidence is not convincing that Von Almen accounted to Smith for the proceeds of the note which furnished the consideration for the deed, or that Smith paid the $25 consideration stated in the Von Almen deed to him. Even aside from the possibility of an accounting by Von Almen for the proceeds of the note, Smith had an interest in obtaining the deed for the note he held against Hannah and Willie, and in this manner realizing something on his note. Smith had such financial interest in the property attempted to be conveyed by the deed that the acknowledgment taken by him was a nullity. The deed not being acknowledged to release Willie's homestead interest, and the interest conveyed being less than $1000 in value, the deed did not convey any title.

The defendants, other than W. L. Smith, who are grantees of Von Almen or successors in the chain of title from him, contend they are *bona fide* purchasers, and for that reason their respective interests should not be set aside even though the deed from plaintiffs to Von Almen should be vacated. The proof shows each of them paid a valuable consideration for their respective interests and that they did not participate in any way in procuring the deed from plaintiffs. There is no evidence that any of them had notice of any character that the deed had been procured through the fraud of Smith. In disposing of their contentions the distinction must be kept in mind between the effect of a void deed and one that is voidable. A void deed passes no title and can not be made the foundation of a good title even under the application of the equitable doctrine that protects *bona fide* purchasers. (*Whittaker* v. *Miller*, 83 Ill. 381; *Mickey* v. *Barton*, 194 id. 446; *Oswald* v. *Newbanks*, 336 id. 490; 26 C. J. S. p. 307, sec. 68; *Trout* v. *Taylor*, 220 Cal. 652, 32 Pac. (2) 968; *Kline* v. *Mueller*, 276 Pac. (Okla.) 200.) The deed of Willie Logue being

void and ineffective to pass any title to his interest, the claims of defendants as *bona fide* purchasers can not prevail against his interest.

The defective acknowledgment did not make the conveyance void as to those grantors who had no homestead interest in the lands. It is the fraud practiced by Smith in procuring the deed that affects their transfer.

A voidable deed is good against everyone, including the grantor, until it has been set aside by a court of competent jurisdiction. (26 C. J. S. p. 307, sec. 68.) It passes title to the grantee defeasible in character and subject to being defeated at the suit of the grantors. The fraud that furnishes the basis for setting aside of plaintiffs' deed to Von Almen was fraud in the inducement, and, therefore, the deed was voidable. It was subject to being set aside by the grantors as against all persons participating in or benefiting from the fraud, but it is valid and enforcible as to the rights of the defendants who are innocent purchasers for value. *Gavagan* v. *Bryant,* 83 Ill. 376; *Bradley* v. *Luce,* 99 id. 234; *Robbins* v. *Moore,* 129 id. 30.

It is contended that Von Almen's grantees and their successors in title are not *bona fide* purchasers as against the interest of Hannah Logue and Mary Logue. It is claimed that the possession of Hannah Logue and Mary Logue was notice to the purchasers of all their rights and equities in the land. The deed to Von Almen conveyed an undivided one-half interest in the oil and gas in place, with the right to the grantees to enter upon the surface and remove it. The grantors retained the other undivided one-half interest in the oil and gas and all interest in the surface, subject to Von Almen's right to enter upon the surface and explore for and remove the oil and gas. By such conveyance Von Almen's interest in the oil and gas was that of a tenant in common with the Logues. (*Updike* v. *Smith,* 378 Ill. 600.) Von Almen's right to enter upon the surface was limited to exploring for and the removal

of the oil and gas. Hannah Logue's and Mary Logue's possession of the surface was not adverse to the interest that the deed purported to convey to Von Almen in the oil and gas. Neither was their possession of the surface adverse to his limited right of entry. Under such circumstances their possession would not serve as notice to Von Almen's grantees of any equitable rights they claimed against the interest which their deed purported to convey to Von Almen.

The deed from the Logues to Von Almen named as grantors all those having an interest in the lands as tenants in common and their respective spouses. It purported to convey "an undivided one half interest in and to all the oil, gas and other minerals in and under and that may be produced" from the lands described. The deed recites that all the persons named as grantors shall be called "grantor" (whether one or more.) The deed was prepared by W. L. Smith. A question is raised as to the part of each interest that the deed conveys. Had it been signed by all the persons named as grantors it is evident that it would have resulted in conveying an undivided one half of the whole. The words used come within the definition of a latent ambiguity. In *Weber* v. *Adler,* 311 Ill. 547, this court said: "A latent ambiguity occurs where a writing appears on its face clear and unambiguous but which in fact is shown by extrinsic evidence to be uncertain in meaning, or where a description apparently plain and unambiguous is shown to fit different pieces of property, and in such case, an ambiguity being raised by extrinsic evidence, the same kind of evidence may be admitted to explain it or identify the property referred to in the writing.—*Doyle* v. *Teas,* 4 Scam. 202; *Marshall* v. *Gridley,* 46 Ill. 247; *Fisher* v. *Quackenbush,* 83 id. 310; *Evans* v. *Garry,* 174 id. 595; *Harman* v. *People,* 214 id. 454."

Extrinsic evidence was introduced to show that the parties were conveying a 1/2 of their respective interests.

Smith testified that such was his intention. That is the construction the parties have placed upon the deed, and under such construction then the deed that Von Almen received conveyed to him only a ½ of each share. The result would be that the interest that Von Almen acquired was 11/28ths of the oil and gas instead of 14/28ths, the difference being that the 2/28ths interest which Willie Logue held and which we have held was not conveyed by reason of the defective acknowledgment and the 1/28th interest held by Mary Taylor who did not sign the deed were not conveyed. The conveyance of Von Almen to W. L. Smith was a 1/4th of the whole, and the other deeds of Von Almen to the respective grantees were fractional interests of the whole. It is equitable and would be in accordance with what is shown to have been the construction the parties placed upon the deed that the fractional interest of Von Almen's grantees should be computed on the basis that Von Almen only owned an 11/28ths interest and that he was conveying a fractional part of that interest.

The mineral deeds of Von Almen and wife to Alf Richard Thompson and Mabel Thompson, conveying a 3/32d part, to Ruth G. Breen conveying a 1/16th part, to Van C. Mundwiler and Lottie Mundwiler, a 1/32d part, to Clarence T. Smith a 1/16th part, and the deeds from any of said grantees to their successors in title can not, for the reasons stated, be set aside.

Our attention is directed to the disclaimer of W. L. Smith. The decree appealed from was entered January 15, 1941, and notice of appeal was filed February 27. On March 4, Smith filed a notice of appearance in the case and an acceptance of service of the notice of appeal and joined therein. Seven days thereafter he filed in the circuit court of Fayette county an instrument disclaiming any right, title or interest in the lands involved in this suit and averred that after the expiration of thirty days from the date of the decree, but before the notice of appeal was

filed, he transferred and assigned to a *bona fide* purchaser all interest he had in said lands. The appeal was not made to operate as a *supersedeas* but the disclaimer of interest does not present any question that can be adjudicated in this proceeding. The merits of the case have to be determined according to the rights fixed by the decree appealed from, and the fact that one of the parties whose interest is affected has subsequently conveyed, does not present any question that can be given consideration on this review.

For the reasons assigned, the decree of the circuit court is reversed and cause remanded, with directions to enter a decree in accordance with the views expressed.

*Reversed and remanded, with directions.*