(No. 13573.—Decree affirmed.)
MARY D. BRENNEMAN *et al.* Appellants, *vs.* METTA F. H.
DILLON, Appellee.

*Opinion filed December 21, 1920—Rehearing denied Feb. 4, 1921.*

1. DEEDS—*to set aside deed complainants must prove allegation*
*of mental incapacity.* The burden is on the complainants in a bill
to set aside a deed and for partition to prove their allegation of
mental incapacity on the part of the grantor.

2. SAME—*a grantor is presumed to have conveyed property he*
*owned.* The presumption is that a grantor, in executing a deed,
intended to convey property he owned.

3. SAME—*rule that intention of grantor should be given effect*
*applies to description.* The rule that the intention of the parties is
the test by which to determine the effect of deeds applies to the de-
scription of the property as well as to other parts of the instrument.

4. SAME—*deed may be good without usual mode of description.*
A deed may be good without the usual mode of description by a
governmental survey or by lots and blocks or metes and bounds,
provided the property can be definitely located from the descrip-
tion in the deed.

5. SAME—*description is sufficiently definite if it can be made certain by aid of extrinsic evidence.* A deed will not be held void for uncertainty in description if the description can be made certain and the property located by the aid of extrinsic evidence, and a false description may be rejected for the purpose of giving effect to the deed if the true words are sufficient to designate the land.

6. SAME—*deed will be construed most favorably to grantee.* A deed will be construed most favorably to the grantee, and conflicting descriptions should be reconciled, if possible, and that construction adopted which best comports with the intention of the parties.

7. SAME—*deed from husband to wife is not presumed fraudulent as to heirs.* As against his heirs a husband has a legal right to convey property to his wife as a gift, and the mere existence of the relation of husband and wife between grantor and grantee will not create any presumption of fraud, where rights of creditors are not involved requiring the grantee to prove the fairness of the transaction.

APPEAL from the Circuit Court of Whiteside county; the Hon. FRANK D. RAMSAY, Judge, presiding.

HENRY C. WARD, and CARL E. SHELDON, for appellants.

CLYDE SMITH, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Moses Dillon died intestate January 11, 1916, in New York City, leaving a widow, Metta F. H. Dillon, and as his only heirs four children, Mary D. Brenneman, Margaret Grimes, Alice D. Overson and Joseph G. Dillon, and also a grandson, Moses G. Dillon, only child of a deceased son. Dillon had resided and been engaged in business in Sterling, Illinois, many years, and from 1869 had been the principal stockholder in and president of the Moses Dillon Company, a corporation, which dealt in coal, grain, lumber and building materials and did a large business. A few years before his death Dillon and his wife removed to New York, where they resided until his death. None of his children, who were all married, resided in New York. Metta F. H. Dillon was his third wife and was not the mother of any

of his children. While residing in New York Dillon returned to Sterling about twice each year to look after the business of the corporation of which he was president. It is not disputed that he was an active, capable and successful business man, of sound mentality, and that he enjoyed good health. On the day of his death, January 11, 1916, he executed a deed conveying real estate in Sterling owned by him to his wife. The deed was signed by him by his mark, was properly acknowledged and immediately mailed to the recorder at Morrison, the county seat of Whiteside county, Illinois. It was received and filed for record January 14, 1916. In May, 1917, the heirs of Dillon filed a bill for the partition of the real estate conveyed to Metta F. H. Dillon by her husband and asked that the deed be canceled, the bill averring that the grantor, at the time he made the deed, was of unsound mind and incapable of understanding the nature and purpose of the deed, that he was induced to make it by the undue influence of the grantee, and that the deed did not describe and convey real estate owned by the grantor. After answer and replication filed the cause was referred to the master in chancery to take testimony and report his conclusions. The master reported that the deed was executed about one hour before the death of the grantor; that the description of the property in the deed is incorrect and from the deed it is impossible to determine what property was intended to be conveyed; that at the time of the execution of the instrument Dillon had not sufficient mental capacity to make a valid deed and that the purported deed was void and of no effect. The master made no finding on the issue of undue influence. He recommended a decree granting the relief prayed in the bill. The chancellor sustained exceptions to the master's report and entered a decree dismissing the bill for want of equity. From that decree complainants have prosecuted this appeal.

No testimony was introduced by complainants on the trial as to the condition of Moses Dillon's mind at the

time he executed the deed or that he was under the undue influence of Metta F. H. Dillon at the time. The deed itself is solely relied on by them to support the allegations of their bill. Defendant read in evidence the affidavit of the physician who attended Dillon in his last illness; the affidavit of the notary public who took the acknowledgment; the affidavit of Stanley R. Walker, employed by the Corn Exchange Safe Deposit Company as superintendent in charge of vaults of the Hudson River branch of the company; and the affidavit of Catherine Gallagher, the nurse who attended Dillon in his last illness. These affidavits are to the effect that making the deed was first suggested by the grantor; that it was voluntarily executed, without influence from the grantee or anyone else, and that the grantor was of sound mind when he made the deed and fully understood and comprehended the nature and effect of his act. These affidavits were the only evidence on the subjects covered by them, offered by the defendant. Appellants say the affidavits were incompetent; and this is true, of course, if their competency had been objected to. The abstract shows that when the affidavits were offered, "complainants do not object to the above evidence on the ground that such evidence is in the form of affidavits instead of depositions, and complainants admit that if the affiants were sworn they would testify to the same things in the same way. It is the intention of this stipulation to admit the matter testified to so far as it would be admissible if the same had been taken by deposition or in open court, and to reserve to the complainants all objections that might have been taken to the same for matters of substance, materiality and relevancy. It is further stipulated that said affidavits were taken at or about the date they were sworn to." If the affidavits were eliminated we do not see that appellants would be in any better position, as they introduced no evidence on the question of the grantor's unsoundness of mind or that he was unduly influenced. All the

proof in this record shows that Dillon's mind was rather exceptionally sound prior· to the date of making the deed. Except the affidavits there is no testimony in the record of the condition of his mind at the time the deed was made. There is no presumption of law that Dillon was of unsound mind or unduly influenced, but the presumption is the other way. The law does not raise the presumption that the deed is invalid because it was to the grantor's wife. If it was understandingly made it is good and valid. To avoid the deed on the grounds alleged in complainants' bill it was incumbent on them to prove their bill.

Appellants place great reliance on the deed itself as being evidence of unsoundness of ·mind, in that it does not correctly describe the property which Dillon had owned many years, had improved and with which he was very familiar. The original bill described the property as block N. By an amendment it was described as part of the northeast fractional quarter of section 28, township 21, north, range 7, east of the fourth principal meridian, beginning at a point on the southerly line of the depot grounds of the· Chicago and Northwestern Railway Company 66 feet easterly from the northeast corner of block 68 of Dement &· Mason's addition to the city of Sterling; running thence southerly ·on a ·line parallel with the east line of said block 72 feet; thence northeasterly 352 feet to a point on the southerly line of the depot grounds 339 feet easterly on said line from the place of beginning; thence westerly along the southerly line 339 feet to the place of beginning, in Whiteside county, Illinois. This description is slightly different from the description in the deeds by which Dillon acquired title to the disputed property in 1875, but the difference seems not material. The property is a triangularly-shaped tract and appears not to have been platted into a block or lots when Dement & Mason's addition was laid out. It came to be known to the tax authorities and others as block N, and by that description was assessed for general

taxes and special assessments, and receipts were given for the payment of the taxes and assessments describing the property as block N with the knowledge of Dillon. The description in the deed to Metta F. H. Dillon is: "All that plot of ground together with three story 3 block buildings, also one frame building and others partly on same block said property being situated between first and second aves. in the city of Sterling County of White Side State of Ill. and being in the addition known as Mason & Dements said property being 365 feet on the North Western Rail Road and on the south side of the North Western Railroad." The property of the Moses Dillon Company occupied and used by it in its business was between First and Second avenues in Sterling, on the north side of the Chicago and Northwestern railway, and the improvements on it consisted of a three-story frame office building, another old frame building, and lumber sheds. The property in controversy is situated on the south side of and along the right of way of the railroad between First avenue and Locust street, and is improved with a two-story-and-basement brick building, a frame building and some sheds. It was stipulated that the property is about 360 to 370 feet long on the south side of the right of way of the railroad. Dillon had lived more than forty years in Sterling and was familiar with the property and the improvements thereon. The property was rented and used for manufacturing purposes.

Appellants contend the deed itself shows the grantor was not of sound mind, and strongly insist the description in the deed was insufficient to pass title to the property in dispute. We regard the latter proposition as the material one for decision. The description is very inaccurate in some respects. It conveys "that plot of ground together with three story 3 block buildings." There are no "block buildings" on the ground. There is a two-story-and-basement brick building on the property. About one-half the space between the basement floor and ceiling is above the

296–10

surface of the ground. It is lighted by windows and has an outside entrance. There is a frame building on the property and other sheds or buildings partly on it and partly on the railroad right of way. It is not situated between First and Second avenues but is between First avenue and Locust street. It is in Dement & Mason's addition instead of Mason & Dement's addition. It does lie south of the Chicago and Northwestern railroad, and extends along the right of way of the railroad 339 feet by actual measurement instead of 365 feet, as stated in the deed. We infer from the testimony that the exact distance the property adjoined the right of way was not known until the surveyor, Hubbard, testified for defendant that he had measured it and the distance was 339 feet. Some witnesses for complainants testified, and it was also stipulated by the parties, that the property extended along the line of the railroad right of way about 360 to 370 feet. The surveyor who surveyed and made a plat of the property testified that on the opposite side from the railroad it is 352 feet long. The presumption is that in executing the deed Dillon intended to convey property he owned. He did own the property in controversy and it is situated in Sterling, Illinois. It does lie on the south side of the Chicago and Northwestern railroad, adjoins its right of way 339 feet, and on the opposite side it is 352 feet long. It is in Dement & Mason's addition. Thus far there is no material defect in description. That the property was described as in Mason & Dement's addition instead of Dement & Mason's addition, and as extending 365 feet along the right of way of the railroad, we do not consider very material. There is also a frame building on the property and other frame structures partly on it and partly on the railroad right of way. There are no "three story 3 block buildings" on the property, and it is not located between First and Second avenues. There is no building, so far as we know and so far as this record shows, known by the general term of block house un-

less it be a house built of cement blocks. There is a brick building on the property. It would usually be called a two-story building, but it has three floors, the basement floor being about four feet below the surface of the ground and the ceiling about the same distance above the surface. It is lighted by outside windows and has an entrance from an outside stairway. It would not have been considered a wholly false description if it had been designated a three-story brick building. The designation of "block" building was a false description, and so was the description that it was located between First and Second avenues.

It is an elementary principle that deeds will, if possible, be made operative to effect the intention of the parties. The rule that the intention of the parties is the test by which to determine the effect of a deed applies to the description of the property as well as to other parts of the instrument. The usual mode of description is by some known designation, such as the description of a governmental survey, or by lots and blocks or metes and bounds, but a deed may be good without such description if the property can be definitely located from the description in the deed. A deed will not be held void for uncertainty in description if by the aid of extrinsic evidence it can be made certain and the property located. A false description may be rejected for the purpose of giving effect to the deed if the true words are sufficient to designate the land. (8 R. C. L. 1071-1073.) A deed to "two entire sections of land lying and situate in the marine settlement and State of Illinois and patented to" the grantor was held sufficiently definite by the aid of extrinsic evidence showing the two sections of land which had been patented to the grantor and that no other sections had been entered by him to which the description could apply, in *Choteau* v. *Jones,* 11 Ill. 300. It has uniformly been held by this court that a description is sufficiently definite which will enable a surveyor to locate the property, either with or without the aid of extrin-

sic evidence. (*Koelling* v. *People,* 196 Ill. 353; *Kleiner* v. *Bowen,* 166 id. 537; *Hayes* v. *O'Brien,* 149 id. 403; *Colcord* v. *Alexander,* 67 id. 581.) A description omitting the town, county or State where the land is situated may be sufficient if the deed provides other means of identification and particulars of description, and a mere general description as a "tract" adjoining other lands will be sustained where the land can be identified. (8 R. C. L. 1077.) Deeds are to be construed most favorably to the grantee, and conflicting descriptions should be reconciled, if possible, and the construction adopted which best comports with the intention of the parties. A deed to "my house and lot," or to "one-half of my lot," may be made sufficient by extrinsic evidence.

Under the established rules for the construction of deeds we are of opinion the description in the deed from Moses Dillon to his wife must be held sufficient to convey the property in dispute.

Appellants contend that because of the relationship between the grantor and grantee the burden is on the grantee to show the dealing was at arm's length. If the affidavits offered by defendant and admitted in evidence by agreement of the parties are considered, the making of the deed originated with Moses Dillon, and it was executed by him to carry out his wish that his wife should have the property, and the transaction was a fair one. If the affidavits be disregarded, would it be incumbent on the grantee to prove the validity of the transaction or be deprived of the benefit of the conveyance? We think not. As against his heirs the husband has a legal right to convey property to his wife as a gift, (*Majors* v. *Everton,* 89 Ill. 56,) and the mere existence of the relation of husband and wife between grantor and grantee will not create the presumption of fraud where rights of creditors are not involved. We know of no rule of law or any adjudicated case holding that when a conveyance from husband to wife is attacked by the

grantor's heirs for fraud the burden is on the grantee to prove the conveyance was valid.

In our opinion the decree of the circuit court is sustained by the facts and the law, and it is affirmed.

*Decree affirmed.*