(No. 28982.—

BARA MATANIC *vs.* JOHN KRAJACH *et al.*, Appellees.—
(LUKA MATANIC *et al.*, Appellants.)

*Opinion filed January 23, 1946.*

DANIEL D. GLASSER, (RICHARD C. LINDBERG, of counsel,) both of Chicago, for appellants.

WILLIAM VIHON, of Chicago, for appellees.

·Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

On the application of Livia Havill and Katie M. Havill, filed in the circuit court of Cook county, the title to the property here in question was registered in their names on November 6, 1913, under the Torrens Act. By mesne conveyances the title was thereafter acquired by Peter Matanic and Bara Matanic, his wife, as joint tenants, and, upon the death of Peter Matanic on December 12, 1940, vested in Bara Matanic as surviving joint tenant. On June 4, 1942, Bara Matanic filed in the circuit court, in the same proceeding in which the land was registered, her petition against appellees, John Krajach and Violet Krajach, his wife, and, also, against Edward J. Kaindl, as registrar of titles of Cook county, and Evelyn B. Stajkowski. The prayer of the petition was that two purported deeds of conveyance to the premises, dated June 17, 1941, and filed for record June 30, 1941, one purporting to be from Bara Matanic to Evelyn B. Stajkowski and the other from Evelyn B. Stajkowski to Bara Matanic, John Krajach and Violet Krajach, as joint tenants, be declared null and void; that the registrar be ordered to cancel and annul the record of the two deeds and the certificates of title issued thereon and that he be required and directed to issue to the petitioner, Bara Matanic, a certificate of title showing title to the real estate to be vested in her free of all liens and encumbrances except unpaid taxes. She alleges in her petition that she did not execute the purported deed conveying to Evelyn B. Staj-

kowski the real estate therein described; that she was on June 17, 1941, a person of advanced age, in ill-health, and unable to read, write, or understand the English language; that on June 17, 1941, the appellees, John Krajach and Violet Krajach, falsely and fraudulently represented to her that a certain instrument presented for her signature related to a bond in connection with the filing of an action for the wrongful death of her husband; that, relying upon their false representations and believing the same to be true, she signed, by her mark, the purported deed to Evelyn B. Stajkowski; that a fiduciary relationship then existed between her and the appellees and that, because of the trust and confidence she reposed in them, she signed said instrument, not knowing that the same purported to be a deed; and that she at no time validly executed the same or authorized anyone to sign it for her.

Appellees answered the petition, denying the deed was obtained in the manner alleged, and averring that the same was knowingly and understandingly executed by petitioner after being advised by her lawyer as to the nature and effect of the deeds in question. They denied all allegations as to fraud. The answer sets out that petitioner was suffering from a malignant tumor and at times was physically unable to care for her needs and comforts; that they had been good friends of hers for a great number of years and as such had bestowed many kindnesses upon her; that after the death of her husband, petitioner had stated on many occasions that she had no living blood relatives and that she wanted to convey her property to appellees in appreciation of their kindness to her; that on June 17, 1941, she insisted upon appellees going with her to her lawyer's office for the purpose of carrying out this often expressed desire; that John Krajach refused to accept the conveyance unless petitioner would become a join tenant with the understanding that she should enjoy the income during her lifetime and that petitioner agreed to this; that

Evelyn B. Stajkowski is a stenographer in the office of the attorney who represented the petitioner; and that petitioner understood that the execution of the deeds complained of was for the purpose of transferring the property to petitioner and appellees in joint tenancy.

On September 21, 1942, Luka Matanic, a brother-in-law of petitioner, and Manda Matanic, his wife, filed their petition in the proceedings, setting forth that on August 10, 1942, Bara Matanic had conveyed to them all her right in the real estate involved, and asking that they be substituted as petitioners herein.

The cause was referred to, and the evidence taken before, an examiner of titles. The examiner made his report, and, on March 21, 1944, the court entered a decree approving and confirming the report and finding the issues in favor of the respondents and against the petitioners. Upon appeal, the Appellate Court for the First District affirmed the decree of the circuit court, and we have granted the petition of Luka Matanic and Manda Matanic for leave to appeal. It is clear the Appellate Court had no jurisdiction because a freehold was involved. The only jurisdiction that court had in the premises was to transfer the cause to this court. However, since this court has now properly obtained jurisdiction by granting leave to appeal from the judgment of the Appellate Court, we will retain jurisdiction to decide the issues in the case, without the unnecessary procedure of remandment to the Appellate Court with directions to transfer the cause. *Saunders* v. *Saunders,* 373 Ill. 302; *People ex rel. First Nat. Bank* v. *Kingery,* 368 Ill. 205.

The issue is one entirely of fact, in which the burden of proof is upon the appellees. Bara Matanic, the original petitioner, was, on June 17, 1941, in poor health, and had been for some months previous thereto. Krajach and his wife had been intimate friends with her and her husband for many years. They lived in the same block, the Kra-

jachs operating a tavern with living quarters in the same building in the rear. When Peter Matanic was killed in an automobile accident in Indiana, Krajach arranged with Michael V. Ostrowski, an attorney, to attend the inquest. He introduced Ostrowski to Mrs. Matanic, and paid him $75, for which Ostrowski gave her a receipt, to cover the cost of filing suit for damages because of her husband's death. She was illiterate and not familiar with the English language. She depended upon Krajach for his advice and assistance. Appellees do not deny that they bore to her a confidential relation. Under such circumstances, the transaction is presumably fraudulent. Where it appears that relations of trust and confidence obtain between parties to a transaction, the dominant party, who has profited thereby, must rebut the presumption of fraud by clear and convincing proof that he has exercised good faith and not betrayed the confidence reposed in him. On the other hand, it is equally well established that the existence of a fiduciary relation does not invalidate a transaction where the evidence discloses that the conveyance was not procured through improper means attended with circumstances of oppression or overreaching, but was entered into by the grantor with full knowledge of its nature and effect and because of his or her deliberate, voluntary and intelligent desire. These principles have been so often enunciated by this and other courts and are so well and universally understood that the citation of authority is unnecessary.

Bara Matanic testified to the facts substantially as set up in her petition; that on June 17, 1941, she went with appellees to the office of Mike Ostrowski, taking with her the title papers to her property, for the purpose of signing a document to transfer the case for her husband's death from Indiana to Chicago; that at Ostrowski's office they told her to make a cross upon a paper and she did so; that they told her they wanted her to put the cross on the papers to transfer the case so they would get a better chance

to fight it; that they did not tell her the papers were deeds and did not tell her that the papers put her property in joint tenancy with John and Violet Krajach; that she did not tell anyone that she wanted to give her property to John Krajach and did not tell John Krajach, Violet Krajach or Mike Ostrowski to draw papers putting her property in John's and Violet's names; that she did not know that the papers she signed gave her property to them until before Easter in 1942; and that when she signed the papers she thought she was signing a bond to transfer her husband's case from Indiana to Chicago.

John Krajach testified that on June 17, 1941, Mrs. Matanic came to his home and, in the presence of his wife, asked him to take her to Mike Ostrowski; that they went to Ostrowski's office; that she told Ostrowski that she wanted to transfer the property to the witness and his wife; that witness did not want it that way, but wanted her to be a joint tenant with him and his wife, and Mrs. Matanic agreed to that arrangement; that the day before, in the Krajach tavern, Mrs. Matanic had stated in the presence of a number of people that she was going to a lawyer the next day and transfer her property to the witness, and that she said "I ain't got nobody but John and John's wife."

Violet Krajach testified that, on the day the deeds were signed, Mrs. Matanic came over and asked for John, and said she wanted them to go with her to Ostrowski's office to put her property in John's name; that John said, "I don't want your property. You put it in joint tenancy." She testified that Mrs. Matanic had often said she had no one except them and that she was going to put her property in John's name; and that when they were in Ostrowski's office, the day the deeds were signed, she told Ostrowski she wanted to put the property in John's name.

Ostrowski testified that Mrs. Matanic and Mr. and Mrs. Krajach came to his office on June 17, 1941; that Mrs. Matanic told him she wanted to give her property to John;

that he asked her if she knew what she was doing and she said "yes;" that she said Krajach was like a brother to her and she was going to give him her property; that Krajach said, "I want you to be in this property," and she said, "All right, then, as long as we have the property equally." Ostrowski testified that he suggested first that a joint tenancy could be created or a will made; that Mrs. Matanic did not want a will, and witness then said to her, "We can convey the property to Miss Stajkowski and she convey it back to you, Mr. Krajach and Mrs. Krajach," and she said, "Fine." He further testified that on two previous occasions, when talking to her concerning her damage suit, she had told him she wanted to transfer her property to Krajach, and on both occasions the witness had told her to "forget about that."

Evelyn B. Stajkowski testified that she was a stenographer employed by Michael Ostrowski; that she was present when Mrs. Matanic and Mr. and Mrs. Krajach came to his office June 17, 1941; that Mrs. Matanic told Mr. Ostrowski that she wanted to give her property to John; that he asked her if she knew what she was doing and she said "yes;" that Mr. Krajach did not want the property in his name alone; that Mr. Ostrowski suggested that it be in joint tenancy and Mr. Krajach said that was the way he wanted it done; and that Mr. Ostrowski instructed her to prepare the two deeds in question.

On behalf of appellees, other witnesses, and also a married son and a married daughter of appellees, testified to statements made in their presence by Mrs. Matanic that she was going to give her property to John.

This is the substance of the material testimony. Under this testimony we cannot say the decree is wrong in denying the relief prayed. The testimony of Michael Ostrowski, Evelyn B. Stajkowski, and John and Violet Krajach was all to the effect that Bara Matanic understood fully the nature of the transaction she was entering into at the

time she signed the deed; that it represented her wish and intention at the time and was not procured by fraud or misrepresentation. We are of the opinion the proof warranted the conclusion of the examiner and the decree of the court that appellants did not prove a case which would have justified setting the deeds aside.

Appellants argue that the conveyance is invalid because made without consideration. The deeds recited a consideration of $500. This was admittedly a fictitious figure. The appellees, however, have established, by a preponderance of the evidence, that the conveyance in question was executed voluntarily, knowingly and deliberately, unattended by any circumstances of overreaching, oppression, misrepresentation, fraud or undue influence. Under such condition of the record it is not material whether the conveyance was made without consideration, or upon a consideration which was inadequate. The owner of property may sell it for very little or give it away for nothing, if he desires, and the conveyance cannot afterward be set aside upon the ground, alone, of inadequacy or want of consideration. *Byron* v. *Byron,* 391 Ill. 256; *Gregory* v. *Gregory,* 323 Ill. 380; *Mees* v. *Steffey,* 310 Ill. 161.

The deeds being valid, Bara Matanic was a joint tenant with John and Violet Krajach when she executed her deed to appellants Lukos and Manda Matanic, as a result of which conveyance the said appellants hold one third of the property.

After a careful consideration of the entire record, we are convinced that the decree of the circuit court of Cook county is correct, and, therefore, that decree is hereby affirmed.

*Decree affirmed.*

Mr. JUSTICE MURPHY, dissenting:

In 1913 the lots involved in this proceeding had been registered under the Torrens Act. (Ill. Rev. Stat. 1945,

chap. 30, par. 45, *et seq.*) Having been registered in accordance with the provisions of said statute, transfers and further proceedings had to be as provided in the act. Sections 47 *et seq.* (par. 91 *et seq.*) deal with the transfer of real estate which had been registered under the prior provisions of the act. The pertinent part of section 47 is that upon filing the deed or other instrument of transfer in the registrar's office and the surrender of the duplicate certificate of title, and "upon its being made to appear to the registrar that the transferee [transferor] has the title or interest proposed to be transferred and is entitled to make the conveyance and that the transferee has the right to have such estate or interest transferred to him" the registrar shall, under such circumstances, issue a new certificate and an owner's duplicate certificate certifying the title to the estate or interest in the land conveyed to be in the transferee. He is required to note upon the original and duplicate certificate the date of the transfer, the name of the transferee and the volume and folium in which the new certificate is registered. Section 93 (par. 130) directs that when any person interested in registered land or any estate or interest therein or charge upon the same shall be entitled to have any certificate of title, memorial, or other entry upon the register canceled, removed, or modified, and the registrar shall fail to remove or modify the same upon request, the circuit court of the county where the land is registered, upon petition by the person interested, may make such order as will be according to equity in the premises. Section 94 (par. 131) of the act provides that any person aggrieved by the action of the registrar or by his refusal to act in any matter pertaining to the first registration of land or any estate or interest therein after the first registration of any transfer of or charge upon the same by filing or neglect or refusal to file any instrument or to enter or cancel any memorial or nota-

tion, or do any other thing required of him by this act, may file his petition in the circuit court in the proceeding in which the land was registered making the registrar and other persons whose interest may be affected parties defendant. The court may enter a decree "according to equity in the premises and the purport of this Act. Nothing in this section contained shall bar such person from filing an original complaint or petition in such cases in equity in any court of competent jurisdiction."

The petition filed by appellants' predecessor in interest undertook to proceed under the provisions of this act to determine whether the deed from Bara Matanic to appellees was obtained by means of false and fraudulent representations, in violation of a fiduciary relation, and whether the grantor, Bara Matanic, had been overreached in the making of said transfer. It was alleged in paragraph 6 of the petition that no proper proof was presented to the registrar of titles that was consideration for said deeds and that, therefore, the certificates of title issued pursuant to the deeds made by Bara Matanic to appellees should be canceled and that the registrar, although requested, had refused to cancel the certificates. The prayer was general, that the court enter an order in accordance with the facts set forth. The matter was referred to an examiner of titles as provided by said act, and the evidence taken before him was before the court when the decree was entered.

I cannot agree with the majority opinion, for the reason that a proceeding under section 94, such as this, is limited in its scope to the provisions of the statute. *Lawton v. Haas,* 293 Ill. 220, was a proceeding under this section to compel the registrar to file a tax deed and enter a memorial thereof on the certificate of title. This court held that the proceeding under said section was one merely to compel the performance of a ministerial duty and not one to adjudicate anything concerning the title. In *Purchase*

v. *Village of Desplaines,* 324 Ill. 584, referring to the jurisdiction of the court when proceeding under said section 94, it was said, "The jurisdiction of the court is limited, under this proceeding, to determining whether the registrar has performed the duties required of him under the act or whether he has taken steps with respect to the title which are not authorized by the act * * *. The proceeding under section 94 is purely statutory and was not intended as a substitute for or to supersede other actions at law or in equity." *Curtis* v. *Haas,* 298 Ill. 485, was a proceeding under section 94. The registrar was directed to cancel notations of delinquent special assessments voluntarily placed by him as memorials on the certificate of title. It was held that the only relief properly obtainable under the petition was the mere cancelation of the notations and that there was no adjudication of other matters respecting the liens.

The jurisdiction of the court in a proceeding under section 94 is to be distinguished from a proceeding under other provisions of the act which pertain to the initial registration of the property under the Torrens Act. My view is, that the only matters open for consideration in this proceeding were those which were authorized by sections 93 and 94 which pertain to the duties of the registrar. The duties of the registrar in reference to a transfer of property already registered are outlined in section 47 and there is nothing in that section as above noted, which authorizes him to proceed to an investigation of the questions which the petitioner undertakes to have adjudicated in this case. The questions which the majority opinion determines are, in my view, outside the scope of the statute.