# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *City of Virginia v. Mitchell*, 2013 IL App (4th) 120629

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF VIRGINIA, Plaintiff-Appellee, v. TERRY D. MITCHELL, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-0629 |
| Filed<br>Rehearing denied | June 28, 2013<br>July 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A finding that defendant violated a city ordinance by failing to register a vacant property and by maintaining a nuisance was reversed on the ground that the evidence established defendant had conveyed the property to a third party by a quitclaim deed prior to the time of the alleged violations, notwithstanding the city's contention that the deed was void for various reasons, including the lack of consideration and discrepancies in the notary public's acknowledgment and the description of the property, since the minimum requirements of the Conveyances Act were satisfied. |
| Decision Under Review | Appeal from the Circuit Court of Cass County, No. 11-OV-12; the Hon. Bob G. Hardwick, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Bethany D. Hager (argued), of Rochelle, for appellant.

Luke A. Thomas (argued), of McClure, Thomas & Thomas, of Beardstown, for appellee.

Panel

JUSTICE HARRIS delivered the judgment of the court, with opinion.

Presiding Justice Steigmann and Justice Appleton concurred in the judgment and opinion.

## OPINION

¶ 1      In March 2011, plaintiff, the City of Virginia, Illinois (City), filed a five-count complaint against defendant, Terry D. Mitchell, alleging violations of the City Code of Virginia (City Code) in relation to a vacant property located at 220 East Beardstown Street in Virginia (the property). Specifically, the City alleged defendant was liable for failure to register a vacant building and maintaining a nuisance. Following a June 2012 bench trial, the trial court found defendant liable for the code violations and ordered him to pay $3,750 in fines for the violations, $750 in attorney fees, and the costs of suit.

¶ 2      Defendant appeals, arguing he was not proved to be the owner of the property during the time period alleged in the City's complaint. We agree and reverse.

¶ 3                      I. BACKGROUND

¶ 4      In March 2001, Leo Reich conveyed title to the property to defendant by quitclaim deed. Defendant recorded that deed in April 2001.

¶ 5      In February and March 2010, Michael Finn, the City's zoning enforcement officer, sent letters to defendant informing him that the property was in violation of the City Code and in need of immediate attention. In April 2010, Dennis Hewitt, an attorney, sent a letter to Finn on behalf of defendant, stating (1) defendant was merely holding title to the property as a third party for the benefit of Leo Reich; (2) after Reich died, defendant deeded the property to Reich's two sons, but evidently the property "was never transferred into their names"; (3) defendant had "no money or assets" and thus would be unable to make the necessary repairs to the property; and (4) defendant would be willing to execute a quitclaim deed transferring his interest in the property to the City. The record does not reveal whether the City replied to the letter or otherwise responded to defendant's offer. Defendant asserted he did not record the deed to Reich's sons, nor did he retain a copy.

¶ 6      In June 2010, after learning Reich's sons did not record the deed, and being unable to contact either of them, defendant conveyed the property to Luke Swan by quitclaim deed (the

Swan deed).

¶ 7 In March 2011, the City filed a complaint alleging defendant, as owner, failed to register the property (City Code of Virginia § 9-4-3 (adopted Feb. 11, 2008)) and maintained a nuisance (City Code of Virginia §§ 9-3-1, 9-3-2 (adopted Oct. 12, 2009)). Section 9-4-3 of the City Code provides, in pertinent part, as follows:

"The owner of a building who knows, or from all the facts and circumstances should know, that his or her building is or has become a 'vacant building' within the meaning of this chapter, after the effective date hereof, or the owner of a building who has been provided with a notice of determination in the manner prescribed herein, shall register the building with the city ***." City Code of Virginia § 9-4-3 (adopted Feb. 11, 2008).

Section 9-3-3 of the City Code provides, in pertinent part, as follows:

"[I]t shall be unlawful for the owner, occupant or person in custody or possession of any dangerous building to permit the same to remain in a dangerous condition." City Code of Virginia § 9-3-3 (adopted Oct. 12, 2009).

¶ 8 Although the property may have been in violation of the City Code prior to January 1, 2011, the City only alleged violations occurring on and after that date. In May 2011, defendant unsuccessfully moved for summary judgment arguing he was not the owner of the property during the period alleged in the complaint. A bench trial was held in June 2012.

¶ 9 At trial, the 2001 quitclaim deed from Leo Reich to defendant was admitted as evidence of defendant's ownership of the property. In response, defendant offered the Swan deed, which was admitted without objection. At trial Luke Swan identified the June 2010 quitclaim deed and confirmed he signed and accepted delivery of it. The Swan deed bore a notary public's acknowledgment dated "17th, June, 2010." Defendant's and Swan's signatures on the deed were dated "18th day of June 2010" and "6-18-10," respectively. The deed recited $500 as the consideration paid and described the property as "220 East Beardstown Rd. Virginia, Il. 62691 Parcel ID 11-042-15-00." Finn, the City's zoning enforcement officer, testified that the property was actually located at 220 East Beardstown *Street* in Virginia and associated with the parcel ID number 11-042-*01500*. He testified that to his knowledge there is no "Beardstown Road" in Virginia, but there is a "Beardstown Street." A stamp from the Cass County clerk and recorder's office on the deed indicated it was recorded on May 24, 2011, after the City had filed its complaint.

¶ 10 Swan testified he did not pay the $500 consideration to defendant. Swan also testified defendant never informed him that the property might be in violation of the City Code. He testified he would not have accepted the property from defendant at the time of the conveyance had he known its condition. Swan also testified he was unaware of defendant's representation that he had previously conveyed the property to someone else.

¶ 11 During closing argument, the City argued the Swan deed was invalid, stating:

"The recorded deed itself, we have argued this before, that there is not any case that would support the court finding that that document is in fact a lawful conveyance of the property. That's why we examined Mr. Swan and he indicated that he would not have accepted the property had he known the condition it was in. That he in fact did not pay [defendant] $500.00 for the property. There was no consideration given. The document

-3-

on its face, as they say, it's a deed, it's not even a correct recitation of the transaction because there was no money exchanged. There is no street in the City of Virginia as Beardstown Road, there is no road named that. The parcel identification number, no matter how much you look at the discrepancy, it's an incorrect parcel identification number."

¶ 12    At the conclusion of the trial, the trial court found the Swan deed was not valid and that "[defendant was] in fact the owner as of [January 1, 2011], and there had not been a valid conveyance to Mr. Swan prior to that time." Accordingly, the court found defendant liable for the ordinance violations and ordered him to pay $3,750 in fines for the violations, $750 in attorney fees, and the costs of suit.

¶ 13    This appeal followed.

¶ 14                                    II. ANALYSIS

¶ 15    Defendant asserts the trial court erred by finding he was the owner of the property during the period alleged in the City's complaint. Specifically, defendant contends the Swan deed was sufficient to prove defendant did not own the property during the period alleged in the City's complaint. In response, the City argues the Swan deed was invalid and therefore was not proof of ownership by Swan. We agree with defendant and reverse.

¶ 16              A. The City's Burden of Proof and the Trial Court's Findings

¶ 17    The City here sought to hold defendant liable as the owner of the property. Therefore, the City was required to prove by a clear preponderance of the evidence that, among other things, defendant owned the property on and after January 1, 2011. See *City of Chicago v. RN Realty, L.P.*, 357 Ill. App. 3d 337, 345, 827 N.E.2d 1077, 1084 (2005) (A trial on municipal building code violations is a quasi-criminal proceeding in which "the City must prove by a clear preponderance of the evidence that a building owner violated the relevant ordinance.").

¶ 18    The trial court found "there had not been a valid conveyance to Mr. Swan," essentially finding the Swan deed was void. See *Logue v. Von Almen*, 379 Ill. 208, 223, 40 N.E.2d 73, 81 (1941) ("A void deed passes no title ***."). The court explained it found the deed invalid to effectuate a valid conveyance due to the following facts: (1) Swan paid no actual consideration for the property; (2) the deed contained no "legal description" because the deed listed an address of "220 East Beardstown Rd." and the property was actually located at 220 East Beardstown Street; and (3) the notary public's acknowledgment predated the signatures on the deed. Implicit in the court's ruling is its finding defendant did not convey the property to Leo Reich's sons following Reich's death.

¶ 19    Whereas a void deed cannot pass title, a voidable deed passes title and "is good against everyone, including the grantor, until it has been set aside by a court of competent jurisdiction." *Logue*, 379 Ill. at 224, 40 N.E.2d at 81-82. Here, the trial court noted alleged defects in the Swan deed which would not render the deed void, but only possibly voidable. Only a party claiming an interest in title to property may request a deed be found voidable. See *McGovern v. McGovern*, 268 Ill. 135, 138-39, 108 N.E. 1024, 1025-26 (1915); *Yott v.*

-4-

*Yott*, 265 Ill. 364, 367, 106 N.E. 959, 960 (1914). And according to *Logue*, even where a deed is eventually determined to be voidable, legal ownership of the property remains with the grantee until judgment setting aside the deed is entered. *Logue*, 379 Ill. at 224, 40 N.E.2d at 81-82. Thus, a deed in evidence is facially valid where (1) its authenticity had been established and (2) it is neither void nor has it previously been set aside by a court of competent jurisdiction as voidable, and a court may consider the deed as evidence of ownership. *Id.*

¶ 20                                                    B. The Standard of Review

¶ 21        A trial court's findings of fact will stand unless they are contrary to the manifest weight of the evidence. *City of McHenry v. Suvada*, 396 Ill. App. 3d 971, 980, 920 N.E.2d 1173, 1182 (2009). A finding is against the manifest weight of the evidence if the opposite conclusion is readily apparent. *Id.* In reviewing the trial court's conclusions of law, we apply a *de novo* standard of review. *Eychaner v. Gross*, 202 Ill. 2d 228, 252, 779 N.E.2d 1115, 1131 (2002).

¶ 22                                                  C. The Swan Deed Was Not Void

¶ 23        At trial, defendant presented the trial court with the Swan deed, a quitclaim deed, dated June 2010, purporting to convey the property from defendant to Luke Swan. If the Swan deed was authentic and not void, and if title to the property remained out of defendant's hands during the time period alleged in the City's complaint, the trial court should have found that defendant did not own the property during the time period alleged in the complaint.

¶ 24                                             1. *The Swan Deed Was Authenticated*

¶ 25        Luke Swan authenticated the quitclaim deed as the instrument used to convey the property to him in June 2010. At trial Swan testified:

     "[DEFENSE COUNSEL]: And did you agree to purchase the property from [defendant]?

     [SWAN]: I agreed to accept the property from him, yes.

* * *

     [DEFENSE COUNSEL]: Thank you. And did you in fact accept a deed–a quitclaim deed for that property from [defendant]?

     [SWAN]: Yes, I did.

* * *

     [DEFENSE COUNSEL]: The judge is handing you what's been marked as Defendant's Exhibit [No.] 1. Can you identify that document?

     [SWAN]: Yes.

     [DEFENSE COUNSEL]: What is it?

     [SWAN]: This is the paper that [defendant] and I had agreed upon, and he handed to me, I guess it was in June of 2010, not 9.

[DEFENSE COUNSEL]: Thank you. Okay, what is this document specifically, you said it's your paper you agreed upon, but what is it specifically?

[SWAN]: It's a quitclaim deed.

[DEFENSE COUNSEL]: And does it convey the property from [defendant] as grantor to you as grantee?

\* \* \*

[SWAN]: It's from [defendant] to me.

[DEFENSE COUNSEL]: Thank you. Down at the bottom of that page, is that your signature?

[SWAN]: Yes, it is.

[DEFENSE COUNSEL]: And what did you write above your signature?

[SWAN]: I put that I received the above stated property from [defendant] this 18th day of June, 2010."

¶ 26    Swan's testimony was sufficient to establish the deed's authenticity. Ill. R. Evid. 901(b)(1) (eff. Jan. 1, 2011). Moreover, the City did not object to the deed's admission at trial.

¶ 27    The trial court noted the notary public's acknowledgment on the deed was dated June 17, 2010, whereas defendant and Swan's signatures were dated June 18, 2010. The court did not elaborate on whether it viewed this discrepancy as relevant to the deed's validity, authenticity, or both. Regardless, we find the discrepancy in the date of the acknowledgment to be irrelevant to any issue here. We note that a deed need not even be acknowledged in the first place in order for it to pass title. See 765 ILCS 5/35c (West 2010); see also *Zilvitis v. Szczudlo*, 409 Ill. 252, 258, 99 N.E.2d 124, 127 (1951).

¶ 28                    2. *The Swan Deed Was Evidence of Ownership*

¶ 29    Section 1 of the Illinois Conveyances Act (Conveyances Act) (765 ILCS 5/1 (West 2010)) outlines the minimum requirements necessary for a deed to pass title:

"[E]very deed, mortgage or other conveyance in writing, not procured by duress, and signed by the party making the same, the maker or makers being of full age and sound mind, shall be sufficient, without livery of seizin, for the giving, granting, selling, mortgaging, leasing or otherwise conveying or transferring any lands, tenements or hereditaments in this state, so as, to all intents and purposes, absolutely and fully to vest in every donee, grantee, bargainee, mortgagee, lessee or purchaser, all such estate or estates as shall be specified in any such deed \*\*\*."

The Conveyances Act thus requires that a deed intended to convey real property specify the estate to be conveyed, be in writing, and be signed by the grantor, who is neither under duress, a minor, nor of an unsound mind. Our courts have also held that a deed must be delivered to, and accepted by, the grantee. *Gallagher v. Girote*, 23 Ill. 2d 170, 174, 177 N.E.2d 103, 106 (1961). A deed meeting these minimum requirements is not void and will effectively pass title.

¶ 30 The Swan deed reads, in pertinent part, as follows:

"The GRANTOR, [defendant], for and in consideration of $500 (five hundred dollars) in hand paid, conveys and quit claims to Luke Swan, GRANTEE, the right, title and interest, if any, which GRANTOR may have in the following described real estate: 220 East Beardstown Rd. Virginia, Il. 62691 Parcel ID 11-042-15-00.

18th day of June 2010.

[Signature of defendant]

[Printed name of defendant].

State of Illinois.

County of Cass.

[Notary acknowledgment dated] 17th, June, 2010."

The bottom of the deed bears the following handwritten notation:

"Received above stated property from [defendant] this 18th day of June 2010. Acknowledge that said property has taxes due, amount unknown. Approximately $2000 is what is believed to be the past due amount.

[Signature of Luke Swan] 6-18-10"

The Swan deed (1) was in writing; (2) was signed by the grantor, who was not shown to be of unsound mind, a minor, or under duress; and (3) contained a notation confirming delivery to, and acceptance by, the grantee. The deed was therefore facially sufficient and in conformance with the Conveyances Act.

¶ 31 The trial court further questioned the validity of the Swan deed given the reference to an inaccurate street address and parcel number for the property. The Swan deed described the property as "220 East Beardstown Rd." whereas the property is actually located at 220 East Beardstown *Street*. Because a deed will only pass title in the property specified to be conveyed (765 ILCS 5/1 (West 2010)), the deed's lack of a sufficient description can provide a basis for finding it void. Therefore, we examine this issue further.

¶ 32 "When the land intended to be conveyed can not be located from the description thereof in the deed, the deed is void for uncertainty." *Alleman v. Hammond*, 209 Ill. 70, 71, 70 N.E. 661 (1904). "The purpose of a description of land contained in a deed of conveyance being to identify the subject matter of the grant, a deed will not be declared void for uncertainty if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey." *Brunotte v. DeWitt*, 360 Ill. 518, 528, 196 N.E. 489, 493-94 (1935). " '[G]enerally, *** the deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed.' This principle is supported by a multitude of authorities." *People ex rel. Barrett v. Anderson*, 398 Ill. 480, 493, 76 N.E.2d 773, 779 (1947) (quoting 2 Devlin on Real Estate, § 1012). The presumption is that in executing a deed, the grantor intends to convey the property owned by him. *Brenneman v. Dillon*, 296 Ill. 140, 147, 129 N.E. 564, 567 (1920).

¶ 33 There is no dispute that 220 East Beardstown Street exists and was owned by defendant at the time of the conveyance to Swan. The deed's reference to "road" instead of "street" is insufficient reason to declare the deed void for uncertainty. See *Myers v. Ladd*, 26 Ill. 415,

417-18 (1861) (Where one part of the description in a deed is false and impossible but, by rejecting that, a perfect description remains, the false part should be rejected and the deed held good.). Taken as a whole, the address and parcel ID number in the deed, in light of the presumption that a grantor intends to convey the property owned by him (*Brenneman*, 296 Ill. at 147, 129 N.E. at 567), make identification of the property defendant intended to convey readily apparent. Accordingly, we conclude the Swan deed was not void for uncertainty based on the property's description.

¶ 34     Finally, we find the fact that Swan paid no consideration to be irrelevant to the question of whether the deed was void. See *Matanic v. Krajach*, 392 Ill. 547, 554, 64 N.E.2d 885, 889 (1946) ("The owner of property may sell it for very little or give it away for nothing, if he desires, and the conveyance cannot afterward be set aside upon the ground, alone, of inadequacy or want of consideration.").

¶ 35     We find the Swan deed was evidence of ownership of the property by Swan during the period alleged in the complaint. The trial court erred in finding the deed invalid, treating it as void, and declining to recognize it as evidence of Swan's ownership of the property at trial.

¶ 36     Interestingly, more than a year before the trial, at the hearing on defendant's motion for summary judgment, the trial court gave the City the opportunity to add Swan as a party defendant. The City declined.

¶ 37     The Swan deed, having met the minimum requirements of the Conveyances Act, was not void. The City otherwise failed to establish defendant owned, occupied, or possessed the property during the period alleged in the complaint. The City therefore failed to sustain its burden of proving defendant committed the charged violations.

¶ 38                                    III. CONCLUSION

¶ 39     For the reasons stated, we reverse the trial court's judgment.

¶ 40     Reversed.