# Illinois Official Reports

## Appellate Court

---

**Reverse Mortgage Solutions, Inc. v. Rahman**, 2017 IL App (1st) 161035

---

| | |
|---|---|
| Appellate Court Caption | REVERSE MORTGAGE SOLUTIONS, INC., Plaintiff-Appellant, v. RASHEEDA NAJII ABDUR RAHMAN, Individually; UNKNOWN HEIRS and LEGATEES OF HARVEY T. COLLINS, if Any; UNKNOWN OWNERS and NON RECORD CLAIMANTS; WILLIAM BUTCHER, Special Representative of Deceased; GERALD NORDGREN, Special Representative of the ESTATE OF ROSALIND WYATT COLLINS, Deceased, Defendants-Appellees. |
| District & No. | First District, Second Division<br>Docket Nos. 1-16-1035, 1-16-1069 cons. |
| Filed | June 6, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-35163; the Hon. Pamela Myerson, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James A. Roth, of Fidelity National Law Group, of Chicago, for appellant.<br><br>Timothy B. Newitt, of Johnson, Westra, Broecker, Whittaker & Newitt, P.C., of Carol Stream, for appellees. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pierce and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    In 1961, Harvey and Rosalind Collins bought a property in Chicago. In 1979, Harvey signed a quitclaim deed, conveying the property to Rosalind. Rosalind died, and Harvey then signed a mortgage, which eventually came into the hands of Reverse Mortgage Solutions (RMS). After Harvey's death, RMS tried to foreclose on the property, but the Collins's daughter, Rasheeda Rahman, fought the foreclosure.

¶ 2    We find that the 1979 quitclaim deed contains a sufficient description of the property to convey it from Harvey to Rosalind. But, after Rosalind died intestate, Harvey inherited some portion of the property through Rosalind's estate, which he was able to convey through the mortgage. We remand for further proceedings on RMS's complaint. We also affirm the trial court's denial of Rahman's request for sanctions against RMS.

¶ 3    BACKGROUND

¶ 4    In 1961, Harvey and Rosalind Collins, a married couple, purchased property at 1486 East 56th Street, Chicago, as joint tenants. Eighteen years later, in September 1979, Harvey executed a quitclaim deed on the property to Rosalind. The quitclaim deed contains a description of the property with skimpy detail, but notes that Rosalind resides at 1486 E. 56th Street. At the bottom of the quitclaim deed appears the "address of property" as 1486 E. 56th Street (while also stating that "the above address is for statistical purposes only and is not a part of this deed").

¶ 5    Rosalind died in May 2003. Harvey continued to reside at the property.

¶ 6    In 2006, Harvey executed a "home keeper" mortgage with All America Reverse Mortgage. Harvey received $323,927.68 in exchange for a mortgage on the property. The mortgage note attached and incorporated a legal description of the property. The mortgage was eventually transferred to Reverse Mortgage Solutions. In July 2011, Harvey died.

¶ 7    RMS filed a complaint to foreclose on the property. The complaint also included a count to reform the reverse mortgage Harvey had signed in 2006 because it contained the wrong legal description. The complaint stated that the reformed mortgage should use the property description from the 1979 quitclaim deed (which was attached to the foreclosure complaint).

¶ 8    Harvey and Rosalind's daughter, Rasheeda Rahman, moved to dismiss the foreclosure complaint. Rahman alleged that, due to the 1979 quitclaim deed, Harvey did not have title to the property to convey in the 2006 mortgage, and, accordingly, RMS lacked standing to foreclose.

¶ 9    RMS then filed an amended complaint for foreclosure and reformation and moved to quiet title, alleging that the 1979 quitclaim deed was a nullity because it did not sufficiently describe the property; thereafter, Harvey inherited the entire property after Rosalind's death. RMS included a count for an equitable lien, alleging that Harvey had represented that he had full title when he acquired the mortgage and RMS should have first claim on the property.

¶ 10    Again Rahman moved to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), alleging that Harvey lacked full title to the property when he acquired the mortgage due to the 1979 deed. RMS replied by asserting the invalidity of the 1979 deed and arguing that, even if it was valid, Harvey still had a mortgageable interest and RMS was entitled to an equitable lien. The trial court granted Rahman's motion to dismiss,

in part holding that the quitclaim deed's description, though incomplete, was legally sufficient. The trial court also held that RMS had alleged only theories, not facts, as to how Harvey had regained interest in the property. The trial court noted that probate law would not have automatically vested interest in real property to Rosalind's heirs, and if Harvey did not have an interest in the property, then he could not have promised that interest in the mortgage. The trial court dismissed the claim for an equitable lien with prejudice, and the counts to foreclose and quiet title without prejudice, while the reformation claim remained pending.

¶ 11    RMS filed a third amended complaint to quiet title and for foreclosure, reformation, a declaratory judgment, unjust enrichment, constructive trust, equitable lien, and accounting. Rahman moved to dismiss the quiet title, foreclosure, reformation, and declaratory judgment counts, and answered the other counts. In responding, RMS included an affidavit from Richard Bales, a lawyer for a title company. Bales stated that he had reviewed the relevant documents and, based on his review, "the 1979 deed conveyance is ambiguous on its face." The trial court dismissed the quiet title, foreclosure, reformation, and declaratory judgment counts with prejudice. The trial court held that the 1979 quitclaim deed was effective and that the Bales affidavit was "self-serving." The court also held that RMS had not alleged enough facts showing that Harvey had regained an interest in the property.

¶ 12    Rahman petitioned for sanctions under Illinois Supreme Court Rule 137 (Ill. S. Ct. R. 137 (eff. July 1, 2013)), alleging that RMS's complaints had not been well grounded in fact or law; the trial court denied the petition. RMS eventually voluntarily dismissed the remaining counts.

¶ 13    Rahman filed a timely notice of appeal as to the trial court's denial of sanctions; RMS filed a timely notice of appeal as to the dismissal of its claims.

¶ 14                          STANDARD OF REVIEW

¶ 15    We review the trial court's dismissal of a complaint under section 2-619 *de novo*. *Evanston Insurance Co. v. Riseborough*, 2014 IL 114271, ¶ 13. A section 2-619 motion admits the legal sufficiency of the complaint but argues that some defense or affirmative matter defeats the claim. *Ball v. County of Cook*, 385 Ill. App. 3d 103, 107 (2008).

¶ 16    We review the trial court's denial of a motion for sanctions for an abuse of discretion. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16.

¶ 17                              ANALYSIS
¶ 18                 The Quitclaim Deed Was Legally Sufficient.

¶ 19    RMS first asserts that due to an incomplete legal description of the property, the 1979 quitclaim deed was invalid.

¶ 20    A quitclaim deed must include a description of the real estate conveyed. 765 ILCS 5/10 (West 2014). We presume that, in executing the deed, the grantor intends to convey the property he or she owns. *City of Virginia v. Mitchell*, 2013 IL App (4th) 120629, ¶ 32. If the land cannot be located from the description in the deed, the deed is void for uncertainty. *Id.* The purpose of this description is to identify the deed's subject matter, and the description is sufficient if it allows a competent surveyor to identify it with reasonable certainty. *Brunotte v. DeWitt*, 360 Ill. 518, 528 (1935). Further, a deed will not be declared void for uncertainty "if it is possible, by any reasonable rules of construction, to ascertain from the description, aided by extrinsic evidence, what property it is intended to convey." *Id.*

¶ 21    Though the description in the 1979 quitclaim deed is truncated, it is not inaccurate. Instead of the full description used in the 1961 deed, it omits several lines. This is a harder case than *City of Virginia*, where the deed referred to the property's address as on a "road" instead of a "street" and was not void for an insufficient description. 2013 IL App (4th) 120629, ¶ 33. But, like in *City of Virginia*, no one disputes that the property existed and Harvey owned it (with Rosalind) when he executed the deed in 1979. In light of the presumption that Harvey intended to convey the property he owned (and the extrinsic evidence of the 1961 deed containing the full legal description of the property), we find that the quitclaim deed incorporates a sufficient legal description and is not void for uncertainty.

¶ 22    That Harvey continued to reside at the property after 1979 does not change our conclusion. Since he and Rosalind remained married until her death, it is not probative of his intent in the quitclaim deed that he lived with his wife and stayed in the home after she died. We also are not convinced that Harvey's representation to the mortgage company that he owned the property in fee simple means that he had not intended to execute a quitclaim deed almost 30 years earlier. It seems far more likely that Harvey, a layman, assumed he had inherited the property outright after his wife's death.

¶ 23    RMS relies heavily on the affidavit of an attorney for a title company, Richard Bales. The affidavit, however, contributes nothing to the factual record. Bales has no knowledge about the making the 1979 deed or the 2006 mortgage that would help us ascertain Harvey's intent in executing either document. And, Bales's legal opinion that the 1979 deed is ambiguous adds no substance to the analysis, as the trial court recognized.

¶ 24                                    Harvey's Inheritance

¶ 25    Since the 1979 quitclaim deed was valid, Harvey successfully conveyed his interest in the property to Rosalind, and she owned the entire property in her lifetime. The next question is, what became of the property after Rosalind's death?

¶ 26    RMS contends that Rosalind died intestate (shown by no will having been filed or a probate estate opened after her death). Under the laws of intestacy, Rosalind's real and personal estate would be divided equally between Harvey and Rahman after payment of all "just claims" against Rosalind's estate. 755 ILCS 5/2-1(a) (West 2014). So, RMS argues, Harvey owned a half-interest and could enter into a valid mortgage against that interest.

¶ 27    In both the trial court and her brief, Rahman prevaricates on the question of whether her mother died intestate. She speculates that Rosalind may have had a will that excluded Harvey from inheriting any interest in the property. She then goes on to chastise RMS for arguing that Rosalind was intestate "without any information or belief." This hedging is not well taken. As one of Rosalind's heirs, Rahman certainly is in a good position to know whether her mother had a will, and certainly has an interest to know. Further, a special representative appointed to represent Rosalind's estate reported in 2014 that it appeared no will was filed after Rosalind died, and no probate estate was opened. If Rahman had contrary information, she did not provide it. RMS did have information and belief to argue Rosalind's intestacy. RMS did not need to do any more to prove a negative (the non-existence of a will).

¶ 28    Rahman's equivocation seeks to avoid cases that let Harvey mortgage any portion of property he inherits. A cotenant can mortgage his or her interest in a jointly held property. *Cadle Co. II v. Stauffenberg*, 221 Ill. App. 3d 267, 269 (1991). And if a cotenant who owns less than the entire interest attempts to mortgage the whole property, the mortgage stays in force for

the actual interest of the mortgagor. *Id.*; see also *South Side Bank & Trust Co. v. Sherlock Homes, Inc.*, 6 Ill. App. 2d 138, 141 (1955) (though mortgage purported to grant greater estate than mortgagor actually owned, conveyance was void only as to excess). "Where part of a real estate sales contract can be performed, that part will be enforced even where another part of the contract is unenforceable or where part of the conveyance agreement fails." *Harris v. Adame*, 2015 IL App (1st) 123306, ¶ 34. Rahman only speculates that the mortgage company would not have entered into the mortgage with Harvey had it known he owned less than the whole.

¶ 29    RMS did allege sufficient facts that Rosalind died intestate and that Harvey had inherited some portion of the property. We acknowledge that its pleadings, done in the alternative, were not terribly helpful on this point, and until Rosalind's estate is sorted out, we will not know how much he inherited. But the probate proceedings of Rosalind's estate have never been in RMS's control. The fact that no one opened an estate immediately after Rosalind's death is not RMS's fault.

¶ 30    We do not know how much of that property Harvey would have inherited, and thus we cannot say how much of it Harvey could have mortgaged. (Other things we do not know include whether Harvey realized that he did not own the entire property, whether Rahman knew that her father had entered into the mortgage, and when the mortgage company discovered the 1979 quitclaim deed.) These are facts that require discovery. Dismissal of the case under 2-619 was error, and we remand for further proceedings on RMS's claims.

¶ 31                                    Rule 137 Sanctions

¶ 32    Rahman filed a cross-appeal, asking us to reverse the trial court's denial of her motion for sanctions under Rule 137. Rahman alleged that RMS's complaints were meritless and reflected a failure to research the facts or law before filing. She now alleges that the trial court should have required RMS to answer her petition, should have held a hearing on the petition's allegations, and should have given a rationale for its decision.

¶ 33    Rule 137 states that an attorney's signature on a pleading indicates that to the best of the attorney's knowledge "after reasonable inquiry," the pleading is "well grounded in fact and is warranted by existing law." Ill. S. Ct. R. 137(a) (eff. July 1, 2013). If the trial court finds otherwise, it may impose "an appropriate sanction" on the offending party, including attorney fees. *Id.* The rule requires that, when a trial court imposes sanctions, it must provide a written explanation containing specific reasons for the sanctions. Ill. S. Ct. R. 137(d) (eff. July 1, 2013). As to a denial of a motion for sanctions, the rule does not require an explanation. *Lake Environmental*, 2015 IL 118110, ¶ 14. Likewise, that rule does not state that a trial court must require the opposing party to answer the petition or hold a hearing, and we will not read these requirements into the rule. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998) ("[b]ecause Rule 137 is penal in nature, it will be strictly construed"). As *Lake Environmental* points out, "[i]f the drafters of the rule intended to impose such a requirement, they would have done so with specific language to that effect." 2015 IL 118110, ¶ 14. Rahman's attorneys cite *Lake Environmental* for the abuse-of-discretion standard, but apparently failed to read further.

¶ 34    We find that the trial court did not abuse its discretion in denying Rule 137 sanctions. Contrary to Rahman's arguments, this was by no means an open-and-shut case, either factually or legally. *Cf. Nelson v. Chicago Park District*, 408 Ill. App. 3d 53, 67-68 (2011) (upholding trial court's imposition of sanctions where attorneys brought second action that was *res judicata* of first action). RMS's multiple complaints are certainly not a model of efficiency,

but neither are they an abuse of the judicial process, or "vexatious and harassing." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007).

¶ 35　　　　We reverse the trial court's dismissal of RMS's third amended complaint but affirm its denial of Rahman's request for sanctions.

¶ 36　　　　Reversed and remanded.